[Criminal No. 710. Filed December 23, 1930.]

[294 Pac. 622.]

PETE BELLAMACK, Appellant, v. STATE, Respondent.

Mr. John W. Ray and Mr. Isaac Barth, for Appellant.

Mr. K. Berry Peterson, Attorney General, and Mr. Lloyd J. Andrews and Mr. Arthur T. La Prade, Assistant Attorneys General, for the State.

ROSS, J.—Defendant, Pete Bellamack, was informed against for the crime of assault with intent to commit murder, by means of a deadly weapon. From a verdict of guilty and sentence of conviction, he has appealed.

Briefly the facts are: Defendant and his wife, Adele Bellamack, had become estranged and were living apart, the latter with her sister Beatrice Garcia, in Phoenix, Arizona. On the evening of January 26, 1929, at about seven o'clock, defendant went to the Garcia residence for the purpose, as he stated, of effecting a reconciliation, which was refused by his wife. Whereupon, according to the testimony of the prosecution's witnesses, defendant threatened to kill her, and immediately thereafter did shoot her through the right lung. The defendant then shot himself with suicidal intent. Both parties recovered. The defendant testified that he did not intend to shoot his wife, but that in trying to kill himself the gun accidentally discharged, the bullet striking her. In view of the verdict returned, the jury evidently did not believe the shot was accidental.

Defendant first complains that the judge who tried him was without right, power or authority to do so, because the case had not been properly or legally assigned to him. The judge who presided over the trial was Honorable FRED L. INGRAHAM, Judge of the superior court of Yuma county. At the time of the trial there were three judges of the superior court of Maricopa county, presiding, respectively, in division Nos. 1, 2 and 3. On March 11, 1929, in division No. 1, before Honorable M. T. PHELPS, Presiding Judge of that division, defendant was ar-

raigned, entered his plea of not guilty, and the trial was set down for April 26th. On April 25th Honorable JOSEPH S. JENCKES, Presiding Judge of division No. 2, assigned the case to Judge Ingraham of Yuma county. On April 26th, the date for trial theretofore fixed by Judge PHELPS, Judge INGRAHAM, sitting in division No. 1, the county attorney, defendant and his counsel being present, all announced ready for trial, a jury was selected and the trial proceeded to a verdict of guilty. After the verdict, Judge INGRAHAM admitted the defendant to bail in the sum of $5,000. On May 1st Judge PHELPS ordered "that a bench warrant issue for defendant, for the reason that his bond for appearance for sentence is inadequate." On May 27th Judge INGRAHAM, presiding in division No. 1, sentenced defendant to the penitentiary for not less than twelve nor more than fifteen years.

It is said that because Judge PHELPS, the regular judge, had not disqualified or excused himself, and was not unable to try the case, it was not legal to assign it to Judge INGRAHAM; that, if Judge PHELPS had been disqualified, Judge JENCKES, presiding in division No. 2, the case pending in division No. 1, was without authority to assign it to Judge INGRAHAM. Whether defendant's contentions are good depend upon the provisions of the state Constitution and the statutes in force at the time of the trial.

Section 7 of article 6 of the Constitution reads as follows:

"The judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, and in case of the disqualification or the inability of the judge thereof to serve, and upon the request of the Governor, shall do so."

Supplementing this provision of the Constitution, the legislature enacted paragraphs 503 and 345 of the Civil Code of 1913, and subsequently, by chapter 61, section 2, Laws of 1921, amended the latter paragraph to read as follows:

"The Judge of any superior court may hold a superior court in any other county at the request of the judge of the superior court thereof, and, in case of the disqualification or the inability of the judge thereof to serve, and upon the request of the governor, shall do so. Such visiting superior court judge may hold court either in the stead of the resident superior court judge, or may hold court at the same time in an additional court room which shall be provided, together with all requirements thereof, by the Board of Supervisors upon the request of the resident superior court judge. Such visiting superior court judge shall be empowered to try such cases and hear such matters as may be assigned to him by the resident superior court judge."

In discussing the power of the regular judge to call in a judge from an outside county, and the power of the visiting judge as affected by the above constitutional provision and by the terms of paragraph 503, *supra*, in *Arizona Mutual Auto Ins. Co.* v. *Bisbee Auto Co.*, 22 Ariz. 376, 197 Pac. 980, 983, we said:

"As we read the constitutional provision, it was not necessary that the regular judge of Cochise county should have been disqualified or incapable of serving in the case before calling in an outside judge. When such contingency exists he may request an outside judge to preside over his court, and, upon the request of the Governor of the state, the judge so requested must respond. However, in the absence of such contingency, he may, at his pleasure and option, call in an outside judge to hold a superior court in his county, and, as we understand it, the judge so called in has the same powers and jurisdiction in the trial and disposition of cases while sitting therein as the regular judge of such county possesses. The statutory provision authorizing the judge to

select another judge to try a case when, for any reason, he is disqualified from trying the same, is not, and could not, be a limitation upon the power given the judge by the constitutional provision. It does not pretend to say he may not call in another judge to hold court generally.''

This decision, it would seem, is decisive of the question raised. But the amended paragraph (345, *supra*), not in force at the time and not noticed in the above case, after vesting the visiting judge with the power to hold court, says he may do so instead of the local judge or concurrently in an additional courtroom, and that he ''shall be empowered to try such cases and hear such matters as may be assigned to him by the resident superior court judge.''

Counsel for defendant seem to predicate their argument upon the idea that, because there are three judges of the superior court of Maricopa county, there are three courts. This is not true, except in a popular sense. Section 5 of article 6 of the Constitution provides that there shall be for each organized county a superior court with at least one judge, and that under enabling legislation, if a county have a census enumeration greater than 30,000, one judge for every additional 30,000, or majority fraction thereof. Such section further provides:

''In any county where there shall be more than one judge of the superior court, there may be as many sessions of the superior court at the same time as there are judges thereof, and the business of the court shall be so distributed and assigned by law, or in the absence of legislation therefor, by such rules and orders of the court as shall best promote and secure the convenient and expeditious transaction thereof.

''The judgments, decrees, orders, and proceedings of any session of the superior court held by any one or more of the judges of such court shall be equally

effectual as if all the judges of said court had presided at such session.''

The last sentence of this provision states in very certain language that the jurisdiction of the superior court of a county where there are more judges than one may be exercised by them jointly or severally, and that the judgments, decrees, orders and proceedings shall be equally as effectual in the one case as in the other.

It was of course contemplated that the court's business should be distributed and assigned, either as the legislature might provide or by the rules and orders of the court, in such manner as should best promote and secure the convenient and expeditious transaction thereof. The legislature has not spoken. We think we may assume, in the absence of a contrary showing, that the defendant's case was assigned in accordance with the court's orders and rules. But even if there were no rules or orders authorizing the judge presiding in division No. 2 to assign a case pending in division No. 1, such assignment would not be void, but at most an irregularity. Defendant did not object to being tried by Judge INGRAHAM, and made no complaint before or during the trial of the manner in which the case was assigned to him.

Defendant cites a class of cases in which mistrials have been declared and judgments vacated because it appeared that a judge was substituted in the course of the trial, and insists that such cases are applicable to the situation here. When the trial is on the merits, for obvious reasons it should be by one judge. But we do not understand that because a judge has taken the plea of the accused and set the date for the trial, as did Judge PHELPS in this case, that he must, unless disqualified, try the case.

It is suggested that the rule requiring that a trial. on the merits shall be by one judge was violated when

Judge PHELPS, while defendant was out on bail as fixed by Judge INGRAHAM, ordered him arrested for inadequacy of bail. This order of Judge PHELPS had nothing whatever to do with the merits of the case or the regularity of the trial. At most, it may be criticised as an irregular exercise of jurisdiction.

We conclude that the case was properly assigned to Judge INGRAHAM, and that he had jurisdiction and power to try the defendant.

Defendant contends that the court erred in refusing to require the state to elect under which of the following sections of the Penal Code of 1913, to wit, 193, 195, 207, 209, 215, 216, 217 and 219, he was being prosecuted. With apt language the information described the offense as an "assault with intent to commit murder," by means of a deadly weapon, as that crime is defined by section 193. Some of the offenses defined by the other sections referred to are included within the crime charged, but we know of no rule requiring the prosecution to elect to try an accused on any of the inferior grades. The most that he can ask is that instructions on such included crimes be given, provided there is any evidence to support or justify them. For instance, in every murder charge there is included an assault, but no one would contend that the prosecution should be required to elect whether it will prosecute for murder or assault or any of the inferior grades of the crime of murder.

Complaint is made of the refusal of the court to put the witness Greg Garcia under the rule. This witness is the brother-in-law of Adele Bellamack, and it was at his home the assault was made. After he had testified the court permitted him to be present during the rest of the trial. Defendant could not have been harmed by this. Whether witnesses shall be put under the rule or not is largely in the discretion of the trial court. *Territory* v. *Dooley,* 3

Ariz. 60, 78 Pac. 138; *Macias* v. *State*, 36 Ariz. 140, 283 Pac. 711.

The court instructed the jury that they might find defendant guilty of an assault with intent to murder, or assault with a deadly weapon, or aggravated assault, and in doing so referred to these different offenses as degrees of the higher offense. Complaint is made of this linguistic error, but we are unable to see where defendant was harmed thereby.

He also complains because the court did not instruct the jury on all of the offenses described in the above enumerated sections of the Penal Code, and in not submitting forms of verdict applicable to each of such offenses. It is enough to say that defendant was not informed against for several distinct and different crimes, but for the crime of assault with intent to commit murder, and that the instructions and forms of verdict given to the jury permitting them to find him guilty of the lower grades of the offense charged were certainly as favorable to him as he could ask or expect under the evidence.

The defendant complains that the court refused to instruct as to the presumption arising from the relationship of husband and wife as bearing upon the intent. The record does not disclose any request for such instruction. We have only the defendant's word for it. If such a request was made, we have no way of knowing whether the instruction should have been given or should not have been given, since the instruction is not in the record. Under the circumstances, the failure to instruct was not error. *Hann* v. *State*, 30 Ariz. 366, 247 Pac. 129.

Finding no error in the record, the judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.