325 P.2d 416

**STATE of Arizona, Appellee,**

v.

**Roy E. J. WILSON, Appellant.**

**No. 1111.**

Supreme Court of Arizona.

May 7, 1958.

William G. Barnes, Phoenix, for appellant.

Robert Morrison, Atty. Gen., and Robert G. Mooreman, Asst. Atty. Gen., for appellee.

UDALL, Chief Justice.

Roy E. J. Wilson, defendant-appellant, was informed against, tried and convicted by a jury of the crime of attempting to obtain money or property by means of a bogus check, a felony (A.R.S. § 13–311). The court rendered judgment of conviction and imposed sentence. This appeal followed. At the trial defendant was represented by an attorney other than the one who now represents him on this appeal.

166

At the close of the State's case defendant moved for an instructed verdict, which was denied. Thereafter defendant took the stand and testified. The primary question presented by this appeal is whether there is on the whole record substantial evidence to sustain the verdict and judgment. Defendant by his assignments of error urges that he was entitled to an instructed verdict at the close of the State's case because the State had failed to prove a prima facie case.

■ It is well settled in this jurisdiction that when a defendant does not stand upon his motion but elects to go forward with the proof he takes the chance of supplying the deficiency upon which his motion is based. On appeal all of the evidence is considered to determine whether or not it will sustain the verdict and judgment. State v. Howe, 69 Ariz. 199, 211 P.2d 467; Rain v. State, 15 Ariz. 125, 137 P. 550; Cf. United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202. Defendant recognizes this principle of law but urges that no deficiencies were supplied by his testimony.

A statement of the facts in the light most favorable to a sustaining of the judgment follows. The parties will be referred to as the State and defendant.

■ On February 7, 1957, defendant entered the A. J. Bayless Market located at 1235 South Central in Phoenix and went to the office of Jack Bittner, the assistant manager. He asked Bittner if he would accept his personal check. On this check blank were written defendant's name (Roy E. J. Wilson) and address, a telephone number (purportedly that of his aunt), the name and address of a branch of the Valley National Bank, the date and $20, the amount of the check.

After some preliminary questions and an answer to a telephone call to the number listed on the check stating the party did not know him, defendant added below his signature "Ariz. Mining Mininig Exp & Dev" which purportedly represented Arizona Mining Exploration and Development Company (a partnership), hereinafter referred to as the "company". Bittner asked defendant if he were authorized to sign for the company and he replied "yes, he was, that he owned the company".

Bittner marked the check noting further clearance was necessary and the defendant proceeded to select some groceries. Bittner called the telephone number again and upon being told for the second time the party at the other end of the line did not know defendant, he called the sheriff's office.

When defendant presented the check to the clerk to pay for the groceries he had selected, the sheriff's deputy approached

him and after a few questions took him to the sheriff's office. There he was booked for investigation on a bogus check charge. Prosecution for a felony followed.

Our leading case on "bogus checks" is Williams v. Territory, 13 Ariz. 27, at page 33, 108 P. 243, at page 245. Therein it was stated:

"* * * we hold that a check given by a person upon a bank in which he has no funds, and which he has no reason to suppose will be honored, is bogus within the statute."

Three of defendant's four assignments of error are directed at the State's failure to prove the elements of the crime as defined in the Williams case.

It is conceded that the check in question was drawn by defendant. Was this check drawn upon a bank in which he had no funds? The facts surrounding the establishment and closing of the company bank account are enlightening. Defendant supplied the mining knowledge and his two partners, Mrs. L. M. Allinio and Mr. Donald DeSilva, supplied the funds to mine manganese ore under defendant's contract with a Jack E. Stewart. A commercial bank account was opened October 5, 1956 with two signatures required to draw checks thereon. The bank signature card recites the two signatures necessary are "L. M. Allinio" and "Jack E. Wilson" (the way defendant usually signed his name).

The authorization for this signature card was signed by all three partners, viz: Allinio, Wilson, and DeSilva.

On November 29, 1956, following some difficulties among the partners, a second signature card was signed by Allinio and DeSilva authorizing checks to be drawn against the partnership account on the single signature of Lee Allinio. On January 14, 1957 this account was closed to zero by a check in the amount of $342.24. On February 7, 1957 the check now before us was issued.

Defendant testified the bank account was improperly closed without his knowledge. The basis for this contention is that his signature as well as that of Allinio was necessary to validly draw a check on this partnership account; it was improper for the bank to allow the signature card on November 29 to supersede the original signature card; and therefore he concludes there should have been funds remaining in the account.

There was testimony defendant was not at the time in question associated with the company and that he had told one of the sheriff's deputies he knew at the time he attempted to pass the check that the account had been closed. Defendant denied this. In light of his own testimony, however, the checks drawn on the company account needed to be countersigned yet the check

here in question was not so countersigned nor in the first instance was it a company check. He testified he could not "at all times" know the balance of the account as an auditor kept the company books but he "knew" there was between "$40 and $65" in the account at the time he drew the check. The branch bank's head teller testified defendant had never had an account in either name used, i. e., Roy E. J. Wilson or Jack E. Wilson. True, in the latter name he was one of those authorized to countersign checks on company funds but this authorization was superseded on November 29.

We cannot say from all of this evidence the jurors were not entitled to draw the conclusion they did as to this essential element of the crime charged.

Did he have reason to suppose the check would be honored? Defendant urges there should have been funds to cover the check as it required two signatures to withdraw funds and he had no countersigned checks to close the account. He then urges this check should have been honored notwithstanding it was not countersigned. This inconsistent position is further aggravated by his signature on the check as "Roy E. J. Wilson" rather than the authorized one of "Jack E. Wilson". The head teller testified the bank would not have honored the check, due to the lack of a countersignature, even had funds remained in the account and had it been properly signed "Jack E. Wilson".

Defendant's contention is further weakened by Deputy Sheriff Samuels' testimony that defendant had told him he knew the account was closed.

Defendant urges that he, as a partner, had a partner's share in the fund in the bank, and as an agent of the partnership could bind the company fund by his check. This contention is not well taken since it appears at the time he drew the check in question he was no longer associated with the partnership and, even had he been, under the contract of deposit as interpreted by him the countersignature of his partner was necessary to bind the bank on a company check.

The jury had substantial evidence upon which to base its conclusion that defendant had no reason to suppose this check would be honored.

Defendant's last assignment of error urges the State failed to show any significant evidence of the existence of a fraudulent intent. Suffice it to say that the above evidence, especially the false phone number, wrong signature, admission he knew the account was closed, and, if it was in truth a company check, failure to provide a countersignature, amply supports the prima facie existence of intent to defraud.

There being substantial evidence to support the verdict, the judgment is affirmed.

WINDES, PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.