375 P.2d 388

STATE of Arizona, Appellee,

v.

Cora Bell MATHIS, Appellant.

No. 1227.

Supreme Court of Arizona.

En Banc.

Oct. 17, 1962.

Stidham & McGrath, Phoenix, for appellant.

Robt. W. Pickrell, Atty. Gen., and Stirley Newell, Asst. Atty. Gen., Charles N. Ronan, Maricopa County Attorney, and Lawrence C. Cantor, Sp. Deputy County Atty., for appellee.

UDALL, Vice Chief Justice.

The defendant, Cora Bell Mathis, was convicted of the crime of voluntary manslaughter in the Superior Court of Maricopa County, Arizona. The charging part of the information alleges that defendant " * * * on or about the 1[st] day of April, 1961 * * * in the County of Maricopa, State of Arizona, did then and there, wilfully, unlawfully, and feloniously, kill one BERNARD MATHIS, a human being, upon a sudden heat of passion * * *."

The record shows that on the 1st day of April 1961 the defendant and her husband, Bernard Mathis, became embroiled in a bitter, violent quarrel at their home in Phoenix and that in the fight that ensued he beat her with his fists and stomped her while she was down on the floor; that during the course of the struggle inside the house defendant obtained a loaded pistol from under a mattress on her bed; that thereafter he (Mathis) pursued defendant into the front yard where he again knocked her down and stomped her. Thereupon he walked away from her, back to the front door of the house, and turned to face her, saying:

"Now, God damn, you got your gun; you shoot me."

At the conclusion of this statement by the husband the defendant fired one shot at him

which went straight into his chest on a trajectory varying but one degree medially and one degree downward. The husband then walked over to the defendant and hit her with his fists and then went back to the house where he collapsed and later died.

There is a conflict in the testimony given by the defendant and the testimony of the witnesses to the incident regarding the position of the defendant and the deceased at the time the fatal shot was fired. Defendant testified that she was lying on her back on the ground and that her husband was standing over her when she fired the shot. She further testified that she only fired to scare him away and did not intend to shoot him. One witness for the state testified that the defendant was standing on her feet at the time she fired the shot. A witness for the defense stated that defendant was getting up and one knee was on the ground at the time she fired. Both witnesses testified the deceased was near the door to the house and a short distance away from defendant when the shot was fired.

The crime of manslaughter is defined in A.R.S. § 13–455 as follows:

"Manslaughter is the unlawful killing of a human being without malice."

A.R.S. § 13–456 reads:

"Manslaughter is of two kinds:

"1. Voluntary, upon a sudden quarrel or heat of passion.

"2. Involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection."

The defendant makes two principal assignments of error. First, that the court erred in denying her motion for a directed verdict and for a new trial on the ground there was not sufficient evidence of voluntary manslaughter. Second, that the court erred in submitting a verdict on involuntary manslaughter to the jury since the defendant was charged with voluntary manslaughter only and therefore the jury could not bring in a verdict on involuntary manslaughter, and that involuntary manslaughter was not an included offense.

In reference to the first assignment of error there were two eyewitnesses who testified defendant shot her husband after he had tauntingly dared her to do so and after he had ceased to assault her and had walked away from her. If the jury believed this testimony there was surely sufficient evidence to sustain a verdict of voluntary manslaughter.

Where the sufficiency of the evidence to support a conviction is in issue, the

evidence must be considered in the strongest light in favor of the verdict, and all reasonable inferences therefrom must be taken in the manner most unfavorable to the defendant. State v. Hilliard, 89 Ariz. 129, 359 P.2d 66; State v. Milton, 85 Ariz. 69, 331 P.2d 846; State v. Stephens, 66 Ariz. 219, 228, 186 P.2d 346. This rule of law includes both the evidence that may have been presented by the state and by the defendant. State v. Wilson, 84 Ariz. 165, 325 P.2d 416. The defendant's testimony that she did not shoot the deceased intentionally, if believed by the jury, would have supported a charge of involuntary manslaughter rather than voluntary. A verdict based on conflicting evidence will not be disturbed by this court. State v. Roberts, 85 Ariz. 252, 336 P.2d 151; State v. King, 66 Ariz. 42, 45, 182 P.2d 915; Dugan v. State, 36 Ariz. 36, 43, 282 P. 481. It may be pointed out that an intent to kill or inflict great bodily harm upon the person of another may be inferred from the intentional use of a deadly weapon. State v. Preis, 89 Ariz. 336, 339, 362 P.2d 660.

Taking the evidence in the light most favorable to the verdict it is clear that the motions for a directed verdict and for a new trial were properly denied.

■ With regard to the second assignment of error, the defendant was charged with voluntary manslaughter and the jury by its verdict found the defendant guilty of voluntary manslaughter. The question then presented, "Did the giving of an instruction by the court that the jury could find the defendant guilty of involuntary manslaughter constitute error?"

In People v. Sica, 76 Cal.App. 648, 245 P. 461, 463, it was said:

"It is doubtless true that a defendant may be found guilty of manslaughter on two different theories (People v. Hubbard, 220 P. 315, 64 Cal.App. 27), and a jury may be instructed on as many theories as are logically deducible from the testimony."

See also People v. McGee, 31 Cal.2d 229, 187 P.2d 706; and People v. Semone, 140 Cal.App. 318, 35 P.2d 379. We have held that one who discharges a gun with intent only to frighten, but not to shoot the deceased, may be found guilty of involuntary manslaughter. Harding v. State, 26 Ariz. 334, 225 P. 482. The evidence in this case was of this nature, and if the jury chose to believe defendant's testimony that she fired the gun only to scare her husband they may very well have found the defendant guilty of that offense. But for another reason we hold that the superior court did not commit reversible error by instructing the jury regarding both theories of the crime. Defendant was convicted of the precise offense for which she was charged, i. e., voluntary manslaughter. We find no harm done to

·her case by giving the additional instruction. In Macias v. State, 36 Ariz. 140, 283 ·P. 711, the defendant argued, as does the defendant in this case, that such additional instruction would lead the jury to believe that the court must find the defendant guilty of something if not of the crime charged. We held that such reasoning would be strained; ·and that, since the verdict was not for the offense defined by the additional instruction, defendant could not have been prejudiced thereby. See also Bellamack v. State, 37 Ariz. 344, 294 P. 622. The California Court of Appeals said in People v. McCurdy, 165 Cal.App.2d 592, 332 P.2d 350, 353:

"It is elementary that an appellant must not only show error but must also show that such error prejudiced his substantial rights and militated against his receiving a fair trial."

Further, we conclude from the verdict of guilty of voluntary manslaughter that the jury were not misled by the instruction given by the court pertaining to involuntary manslaughter. We are of the opinion that the instruction did not prejudice the substantial rights of the defendant.

Judgment affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concurring.