389 P.2d 125

STATE of Arizona, Appellee,

v.

George Clinton TYNES, Appellant.

No. 1255.

Supreme Court of Arizona.

In Division.

Feb. 5, 1964.

Rehearing Denied March 17, 1964.

Robert W. Pickrell Atty. Gen., Stirley Newell, Asst. Atty. Gen., Phoenix, for appellee.

Thomas J. Croaff, Jr., Phoenix, for appellant.

LOCKWOOD, Vice Chief Justice:

Defendant appeals from a conviction of the three crimes of kidnapping with intent to commit rape, rape by force and violence, and robbery. His assignments of error are to the effect that (1) the court should have instructed a verdict for the defendant on each count because of insufficient evidence and (2) submission to the jury of the charges of robbery and kidnapping had a prejudicial effect on the verdict of guilty of rape. His final assignment is that the sentences of twenty to twenty-five years for rape, and five to six years each for robbery and kidnapping, to run concurrently with the first sentence are excessive and unreasonable.

 In examining defendant's contentions, we must of course take the evidence in the light most favorable to the state, and all inferences therefrom must be considered in the most unfavorable manner to the defendant. State v. Mathis, 92 Ariz. 194, 375 . P.2d 388; State v. Silvas, 91 Ariz. 386, 372 P.2d 718. In this light the facts appear as follows:

On the evening of August 13, 1961, the victim, a nineteen year old girl, was driving home from work. She stopped at a service station to buy gas a little after 8:00 P.M. While she was waiting for a car in front to be moved so she could get to the gas pump, one Stewart appeared and got into her car. She asked him to leave, but. he did not. She bought gas, paying the attendant with a ten dollar bill, and received eight dollars in change. She then had a. little over eight dollars in her purse. The service station attendant asked her if she needed any help, and she told him the man. in her car wouldn't get out. The attendant "presumed it was a family quarrel or something" and walked away.

Defendant had been in the service station when the victim first drove in. Some people in another car had given his car a push, and he drove off. He returned to the station shortly thereafter, and drove up beside the victim's car. The victim asked him to get Stewart out of her car, but defendant. "took off" in his car again. Stewart still refused to get out of the victim's car. She told him if he did not, she would call the police. He then told her if she would drive him to a tavern a couple of blocks away, he would get out. She drove him to the tavern and stopped to let Stewart out. Defendant then drove up in his car. Stewart

grabbed the victim's purse, jerked it away from her, got out of her car, and jumped into defendant's car, which immediately drove off.

The victim sat in her car, crying. A few minutes later defendant and Stewart came driving back in defendant's car. Stewart got out of the car and talked to the victim, who asked him to give back her purse. He went to defendant's car, got the purse, and returned, getting back into the victim's car. Defendant drove off again, and Stewart told the victim to follow, which she did. Defendant's car was having trouble and stalling. Stewart told the victim to go ahead of defendant's car, but when it stalled several times, he told the victim to go back, and push the car to get it started which she did. Stewart did not use threatening words, but his tone and actions made the victim confused and afraid to disobey him.

The victim suggested to Stewart that he get into defendant's car, and she would push it to start it, but he told her he wasn't going to get out, although he did so once, and went to defendant's car, where he got a can of beer, returning immediately to the victim's car. Both defendant and Stewart drank beer during the evening, but the victim did not. Stewart parked the victim's car near a canal, while defendant blocked the road in back of it. The victim attempted to get away, offering to let them have her car if they would let her go.

However, Stewart attempted to rape her while defendant held her, and when she tried to scream, defendant held his hand over her mouth. They were startled by the approach of car lights along the canal, and Stewart drove off again with the victim, followed by defendant.

The victim in an attempt to escape jumped from the car as it went past a stop sign. She lost consciousness, and when she regained it, found herself sitting between Stewart and defendant in her car, which was stopped in front of a truck. She threw the ignition keys out of the car, and one of the men got out and tried to find them. The truck had been parked in a private road in front of the Union Sand & Rock plant by a watchman who was guarding a gate with a broken lock. The watchman saw a woman's hand throw the keys, but did not point them out to the man who got out of the victim's car, as the watchman said he was afraid he might get his "head shot off". One of the men (either Stewart or defendant), "hot wired" the car when he couldn't find the keys, and the victim, who had again lost consciousness, was driven to another spot, where she regained consciousness as both Stewart and defendant raped her, despite her protests and struggles. Stewart then drove off with the victim in her car, while defendant drove away in his. The victim lost consciousness once again during this ride. As she came to, Stewart became embroiled in a controversy with a pedes-

trian, and jumped out of the car. The victim then slid into the driver's seat, and drove off to her home.

When the victim reached home, the police were called, and with the aid of the license number of defendant's car, the latter was located. The victim was examined at a hospital by doctors who verified that her hymen was ruptured and she had been ravished. Also her arms and knees were severely skinned and bruised. She had had a physical examination in June, less than two months before, at which time her hymen was intact. After the hospital examination, the victim was taken to police headquarters, where she identified Stewart and defendant in a lineup. The victim had looked in her purse, and discovered the money and certain memoranda which had been there were missing as were her eye glasses. The memoranda which had been in the victim's purse, and her glasses, were found on the front seat of the defendant's car.

■ From the foregoing facts, there was ample evidence to justify submitting the case against defendant as a principal on the rape charge. Likewise the evidence sufficiently established the corpus delicti of a robbery and kidnapping. Pursuant to A.R.S. § 13–140, one who aids or abets in the commission of a crime is liable as a principal. The evidence was sufficient to sustain defendant's conviction as an accomplice who aided and abetted in the commission of both the robbery and kidnapping.

■■ Rule 128, Rules of Criminal Procedure, 17 A.R.S., provides that an information charging two or more different offenses connected together in their commission, shall be set out in separate counts. It further provides that the prosecution is not required to elect between the different offenses charged in such counts, and that the defendant may be convicted of any number of them. Further, evidence of other criminal acts is admissible in any case, when so blended or connected with the crime of which the defendant is accused that the proof of one incidentally involves the other or explains the circumstances of the crime. State v. Villavicencio, 95. Ariz. 199, 388 P.2d 245 (Jan. 8, 1964). Defendant was charged with and convicted of all three crimes. It is evident from the foregoing facts that proof of the robbery, kidnapping and rape charges were almost inextricably blended, in order to explain the circumstances connected with each. There is no merit to defendant's contention that because the proof of robbery and kidnapping may have had a prejudicial effect upon the jury's consideration of the rape charge, they should not have been submitted to the jury.

■ Nor can we say that the sentences were excessive. The penalty for kidnapping with intent to commit rape is twenty

to fifty years imprisonment. The penalty, in each case, for rape with force or violence, and for robbery is five years to life imprisonment.[1] Defendant was sentenced to twenty to twenty-five years for the first named offense, and to five to six years for each of the others, to run concurrently with the longer sentence. We find no abuse of discretion under the circumstances.

The judgment is affirmed.

STRUCKMEYER and JENNINGS, JJ., concur.

1. Sections 13–492, 13–614 and 13–643, A.R.S. (1956) respectively.