407 P.2d 117

### STATE of Arizona, Appellee,
v.
### Clifton DOUGLAS, Appellant.
### I CA–CR 33.

Court of Appeals of Arizona.
Nov. 5, 1965.

Ross Anderson, Phoenix, for appellant.

Darrell F. Smith, Atty. Gen., by Gary K. Nelson, Asst. Atty. Gen., for appellee.

DONOFRIO, Judge.

Clifton Douglas also known as Shaker, hereinafter referred to as Defendant, was charged with voluntary manslaughter, a felony. The first trial resulted in a hung jury. A second trial was had which resulted in a verdict of guilty, and Defendant was sentenced to serve not less than eight years nor more than ten years in the State Penitentiary. From this verdict and sentence Defendant appeals.

The facts of the case are substantially as follows: On or about the 7th day of September 1963, about 4:00 P.M. an altercation arose between Defendant and Marshall Smith, the deceased, hereinafter referred to as the Deceased, on the premises where Defendant was living. The first encounter between the two men was at the open door of the house where Defendant was living. The Deceased was standing in the open door with a two by four board about four feet long with nails driven through one end of it, swinging it about. Apparently the Defendant was inside and was the object of the Deceased's attack although the witness stated she did not see the Defendant inside. The Deceased then stepped down out of the doorway and went around the house. The Defendant came back from the back of the house and the two met on the west side of the house, exchanged words, separated and walked away from each other. The Deceased walked back around in front of the house and then down to the east side of the house and sat down. Defendant and the Deceased met again at the east side of the house. The Deceased still had the spiked two by four with him. As the Defendant came towards the Deceased, Deceased stood up and grabbed the spiked two by four. A witness thought he heard the Deceased say "don't come no closer." The Defendant continued to advance toward the Deceased and the Deceased swung at him with the spiked two by four. The Defendant picked up a dishpan and threw it at the Deceased. The Deceased either then dropped the spiked two by four or threw it at the Defendant. The Deceased was trying to reach the spiked two by four again when the two came together. The Defendant had a knife and after a brief scuffle stabbed the Deceased in the neck with the knife. The Deceased grabbed his neck and fell to the ground. The Defendant went back into the house for a shirt. He came back out and tried to pick up the Deceased and was unsuccessful.

The Defendant then walked away down 15th Avenue. The Deceased died around 5:00 P.M. on September 7, 1963, as a result of the stab wound in the neck. The knife was never found.

The Defendant claims the trial court erred in not granting his motion for a directed verdict for the reason that the evidence does not support the charge of voluntary manslaughter since there was no evidence of a sudden quarrel or heat of passion. We cannot agree. There is evidence from which the jury could find a quarrel provoked by the Deceased. The Deceased was apparently striking at the Defendant with a spiked two by four in the doorway of the house in which the Defendant was living. The Deceased then stepped out of the doorway and walked around the west side of the house where he met the Defendant who had come from the rear of the house. There was a short exchange of words and the Deceased and Defendant turned and walked away from each other. The Deceased then walked around to the east side of the house where he sat down. The Defendant approached him and the struggle which led to the fatal stabbing followed.

■■■ From this we believe there was sufficient evidence of a sudden quarrel and heat of passion to submit to the jury. The reasonable man test is applied in determining if there was a sudden quarrel sufficient to excite the passions of the accused, i. e. would this encounter excite the passions of a reasonable man under all the circumstances. In determining whether the accused killed under the influence of the passion, a subjective test is applied. Green v. State, 195 Ga. 759, 25 S.E.2d 502 (1943); Cavanagh v. Commonwealth, 172 Ky. 799, 190 S.W. 123 (1916).

In State v. Mathis, 92 Ariz. 194, 375 P.2d 388 (1962) the Supreme Court stated:

"Where the sufficiency of the evidence to support a conviction is in issue, the evidence must be considered in the strongest light in favor of the verdict, and all reasonable inferences therefrom must be taken in the manner most unfavorable to the defendant." 92 Ariz. 196, 197, 375 P.2d 388, 390.

Taking the evidence in the light most favorable to the verdict it is clear that the trial court did not err in denying defendant's motion for a directed verdict.

■■■ The claimed error in instructing the jury not to consider involuntary manslaughter is not well taken. The Defendant failed to request instructions on involuntary manslaughter and did not raise the failure to so instruct at any time in the trial court. Notwithstanding, we find no prejudicial error in instructing the jury not to consider involuntary manslaughter. Voluntary manslaughter, as distinguished from involuntary manslaughter, is committed intentionally. Harding v. State, 26 Ariz. 334, 225 P. 482 (1924). Here the intentional use of a knife, a deadly weapon, by the Defendant, is enough to infer an intent to inflict serious bodily harm upon the person of the Deceased. State v. Preis, 89 Ariz. 336, 362 P.2d 660 (1961); State v. Mathis (supra). This circumstance is inconsistent with involuntary manslaughter, which is manslaughter committed unintentionally. Harding v. State (supra).

■■ Defendant next claims that the trial court erred in instructing on flight. We do not agree. The Defendant left the scene after the commission of the crime. Although he went only a short distance and was not trying to conceal himself from arrest, it would be possible to conceal other items such as the knife, that would link him to the crime. The knife was never found. It certainly would have been possible for the Defendant to have concealed a knife after he left the scene. We believe this is all that is necessary to warrant the giving of an instruction on flight. State v. Owen, 94 Ariz. 404, 410–412, 385 P.2d 700 (1963). (This case was vacated by the United States Supreme Court, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 as not complying with the rule for determining the voluntariness of a confession but we do not feel that it detracts from the discussion of flight.) The

instruction did not assume the existence of flight on the part of Defendant. The words "if in fact such took place" left it to the jury to determine under all the circumstances, whether or not flight took place.

Finally, the Defendant claims the trial court erred in mentioning in the instructions that the Defendant was charged with the crime of murder. Although it would be possible for an inadvertent slip to deny a defendant due process, we do not believe such was the result in the instant case. Instructions must be read as a whole and not piecemeal. State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960); State v. Wilson, 95 Ariz. 58, 386 P.2d 655 (1963); State v. Corrales, 95 Ariz. 401, 391 P.2d 563 (1964). In State v. George, 95 Ariz. 366, 390 P.2d 899 (1960) The Arizona Supreme Court stated:

"However, instructions must be considered as a whole and no case will be reversed because of some isolated paragraph or portion of an instruction which, standing alone, might be misleading." 95 Ariz. 371, 390 P.2d 902.

Here any defect was cured when the judge immediately following the mention of the word murder read the information which clearly set forth the crime of voluntary manslaughter, and throughout the balance of the instructions only the elements of voluntary manslaughter were defined for the jury's consideration. A similar situation was before The Arizona Supreme Court in State v. Singleton, 66 Ariz. 49, 182 P.2d 920 (1947), wherein it was stated:

"However, both immediately before and immediately after this improper definition the judge properly, clearly, and at length instructed the jury on the elements of the crime of second degree murder including therein the necessary element of malice. And taken in its context, as it must be, the error was cured, for this court has repeatedly held that if, from an examination of the instructions as a whole, they are free from error, an assignment predicated upon an isolated paragraph, which standing alone might be misleading, will fail." 66 Ariz. 59, 182 P.2d 926.

We are unable to find any reversible error in the trial court proceedings.

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concur.