546 P.2d 6

**STATE of Arizona, Appellee,**

v.

**Jose Jesus CEJA, Appellant.**

No. 3102.

Supreme Court of Arizona,
En Banc.

Feb. 11, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III, Chief Counsel, Grove M. Callison, Georgia Butcher Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by John Foreman, H. Allen Gerhardt, Jr., Deputy Public Defenders, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

On June 30, 1974, Randy Leon and his wife, Linda, were found dead from gunshot wounds in their home in Phoenix, Arizona. The Leons were known narcotics dealers, specializing in the sale of marijuana. The appellant; Jose Jesus Ceja, was thereafter charged with their murder. After trial he was convicted by a jury of both homicides and the death penalty was imposed as punishment. This appeal followed. Judgment of conviction and sentence reversed.

 The court instructed the jury on flight, to the effect that it could consider any evidence of the appellant's running away from the scene of the crime with the other evidence in order to infer the appellant's guilt. A flight instruction is ordinarily only warranted where there is evidence that an accused fled from the scene

of the offense, as upon pursuit or an attempt to avoid revealing his identity. There was introduced by the prosecution no evidence whatsoever of how or under what circumstances appellant departed from the scene of the crime. Leaving the scene of a crime is, in itself, not of sufficient significance to support an inference of guilt. *State v. Salazar,* 112 Ariz. 355, 541 P.2d 1157 (1975); *State v. Bailey,* 107 Ariz. 451, 489 P.2d 261 (1971); *State v. Castro,* 106 Ariz. 78, 471 P.2d 274 (1970); *State v. Rodgers,* 103 Ariz. 393, 442 P.2d 840 (1968). The instruction permitted the jurors to infer that there was evidence of flight by appellant. It was plainly erroneous.

The State argues from *State v. Douglas,* 2 Ariz.App. 178, 407 P.2d 117 (1965), that the instruction on flight was correct. We do not think that because a defendant left the scene of the offense and the instrument with which the offense was committed was never found that these circumstances justify the giving of a flight instruction. Any inference to the contrary in *State v. Douglas* is overruled.

During the trial, a prosecuting witness, Lucian Haag of the City of Phoenix Crime Laboratory, was permitted to testify over objection that another employee, by the name of Gieszl, of the crime laboratory, made certain ballistic comparisons of bullets from two guns known to have been in appellant's possession and with bullets found at the scene of the crime. The testimony was to the effect that some of the bullets found at the scene of the crime were fired from a revolver owned by Leon and that other bullets, because of their markings, were consistent with having been fired from either of the two guns. This testimony by Haag was patent hearsay.

Nevertheless, the State argues that the evidence was admissible as a business record exception to the hearsay rule under A.R.S. § 12–2262. Assuming that §

12–2262 has application here, a question which we expressly do not decide and to which we express grave reservations, Section B of the statute refers only to the introduction of a business record in evidence. It does not allow a witness to testify as to what the record contains nor the witness' conclusions about facts contained in the record. One having no independent knowledge cannot establish by oral testimony facts contained in a written record. *Mitchell v. Emblade,* 80 Ariz. 398, 298 P.2d 1034 (1956). The failure of the court below to restrict the testimony of Lucian Haag was reversible error.

During the course of the investigation, a Phoenix police detective, Eloy Ysasi, talked with appellant's wife. She told Officer Ysasi about certain statments which her husband had made to her. At the trial, counsel for the appellant moved the court to suppress any testimony by Officer Ysasi concerning what had been told to him by the appellant's wife. The deputy county attorney who prosecuted the case stated to the court:

"I will grant Mr. Sullivan that if Mr. Ysasi was to get on the witness stand and say, 'I talked to ᶜMrs. Ceja and she said this, and she said that, and she said something else,' then we would certainly have hearsay. But what we have here is Officer Ysasi testifying: 'I was talking to the defendant. He was telling me certain things. I would then turn to him and say, "Look, I've talked to your wife, and this is what she told me. Why are you telling me this which is entirely different".'

This is certainly not hearsay, Your Honor, but a means of interrogation and certainly does not fall within the privilege statute which Your Honor is looking at."

The principle which precludes one spouse from testifying against the other without the consent of the other is well expressed

in *Peek v. United States,* 321 F.2d 934, 943 (9th Cir. 1963):

"The rule that a husband or wife who seeks to testify *in behalf of* his or her spouse is disqualified as a witness has been abolished in the federal courts. What remains is the rule that a husband or wife cannot be *compelled* to testify *against* his or her spouse, and cannot be *permitted* to do so unless the other spouse consents. This rule is one of privilege, and the privilege may be waived. *Olender v. United States,* 9 Cir., 1954, 210 F.2d 795, 42 A.L.R.2d 736. And this privilege .includes the prohibition against a third person relating a statement made by one spouse against the other which that spouse would not be allowed to relate if called as a witness."

In the instant case, Officer Ysasi testified that he was talking to the appellant when he said to him:

"My statement was, 'You told Tammy that Randy pulled a gun on you and you shot two times and he fell to the floor and you heard him groan.' "

To this, appellant replied:

"Yeah. That was all a lie."

Officer Ysasi further testified:

"I pointed out that Randy had been shot in the front and that, when I observed him, he was laying face down, and he had been shot in the back, and it appeared as though he was on the floor face down when he was shot, which would be the last time, since he was found that way, and I asked him, 'You know, what about it, Joe? Is it the way I've told it,' and he said yes and nodded his head * * *."

We think, therefore, that Officer Ysasi's statement concerning what the appellant's wife had told him was not prejudicial and was harmless beyond a reasonable doubt, since all the evidence repudiates any suggestion that the homicide may have been committed in self-defense. Cf. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

The above-quoted question is not objectionable as hearsay for it was not offered to prove the truth of the words spoken, but to prove the conversation between appellant and the police officer.

During his closing argument, the prosecutor stated:

"Let me ask you this question: What evidence has been presented to you? The only evidence that has been presented to you has been presented by the State. You have heard no other evidence. The evidence as presented to you is uncontradicted. That's the reason I say to you: We have proven the case beyond all doubt. You have nothing except what has been presented to you by the State."

Appellant did not testify in the case. He now contends that the county attorney's argument was an improper comment on the defendant's failure to take the witness stand.

The law in this State is clear.

" ' * * * It is only objectionable to comment on the failure of defendant personally to testify; a comment that certain facts brought out by the prosecution are uncontradicted is not objectionable. The true test is, was the reference calculated or intended to direct the attention of the jury to the defendant's neglect to avail himself of his right? * * *.' " *State v. Acosta,* 101 Ariz. 127, 129, 416 P.2d 560, 562 (1966).

*See also, State v. Adair,* 106 Ariz. 58, 470 P.2d 671 (1970); *State v. Pierson,* 102 Ariz. 90, 425 P.2d 115 (1967); *Tomaris v. State,* 71 Ariz. 147, 224 P.2d 209 (1950); *State v. Serna,* 69 Ariz. 181, 211 P.2d 455 (1949).

At the time of appellant's trial, Rule 8.-2(b) of the Arizona Rules of Criminal Procedure, 17 A.R.S., provided that trial was to commence within 60 days of a defendant's arraignment if he was held in custody. Appellant argues that Rule 8.2(b) was violated.

Appellant was arraigned on July 29, 1974. The jury was selected for his trial on November 8, 1974, 102 days after the arraignment. However, on August 28, 1974, the defense filed and the trial court granted a motion for an examination to determine appellant's mental competency under Rule 11, Arizona Rules of Criminal Procedure, 17 A.R.S. Reports from three doctors were submitted to the court, the last being filed on September 26, 1974. On the 27th of September, the court set October 9, 1974 as the date for a hearing, pursuant to Rule 11.5, Arizona Rules of Criminal Procedure, 17 A.R.S., and on that date appellant was found competent to stand trial.

The elapsed time between the filing of the Rule 11 motion and the competency hearing was 42 days. "Delays occasioned by or on behalf of the defendant, including * * * delays caused by an examination and hearing to determine competency" are excluded from the time limit computations of Rule 8.2. Rule 8.4(a), Arizona Rules of Criminal Procedure, 17 A.R.S. *State v. Landrum,* Ariz., 544 P.2d 664 (1976). When 42 days are subtracted from the 102 days between the arraignment and the commencement of the trial, 60 days remain. The trial was timely started.

It is argued that 12 of the 42 days were not delays occasioned by or on behalf of the appellant. Appellant relies on Rule 11.3(d), Arizona Rules of Criminal Procedure, 17 A.R.S. That rule provides:

"The court shall not commit a defendant to a mental health facility for the purposes of an examination unless it determines that the examination cannot properly be conducted without commitment. Such commitment shall only be for the period of time necessary for the examination not to exceed 30 days."

This rule does not place a time limit on holding of competency hearings. It puts a 30-day limitation on confinement within a mental health facility. Rule 11.5, Arizona Rules of Criminal Procedure, 17 A.R.S., provides that "[w]hen the examinations have been completed, the court shall hold a hearing to determine the defendant's competency." This is in contrast to Rule 11's predecessor, A.R.S. § 13–1621(E) (Supp.1972), which provided that a hearing was to be held "immediately after" an examination was completed. There is no set time during which a hearing must be conducted, and Rule 8.4(a) does not limit the excluded periods to any specific number of days. While failure to expeditiously determine competency might lead to the charging of some time under Rule 8, the 12-day period is not unreasonable nor does it in any way prejudice the appellant or his rights. We think the full 42 days are to be excluded.

Appellant argues that Rule 8, Arizona Rules of Criminal Procedure, 17 A.R.S., was circumvented by selecting a jury within the time limits but not commencing the taking of evidence for another five days. November 8, 1974, the date the jury was selected, was a Friday. November 9 and 10 fell on a weekend, and November 11, 1974 was a legal holiday. The jury was reconvened at 2:00 p. m. on November 12, 1974, but was dismissed until the following morning because a jury in another case had been reconvened to hear final arguments and instructions. With the exception of one working day, there was a continuous progression of appellant's trial. We do not think this subverts the purposes of Rule 8 or denied a fair trial to appellant.

44

Appellant argues that the trial court should have instructed the jury on second degree murder and not limited its instructions to first degree. Appellant failed to object to the absence of second degree murder instructions. By Rule 21.-3(c), Rules of Criminal Procedure, 17 A. R.S., a party may not assign as error the court's giving or failng to give an instruction unless he objects before the jury retires. The comment to Rule 21.3(c) provides that:

"* * * this provision reverses the rule in *State v. Madden,* 104 Ariz. 111, 449 P.2d 39 (1969), that the court is duty bound in all homicide cases to instruct the jury on all necessarily-included offenses that the evidence will support, regardless of whether or not such instruction is requested."

*State v. Vanderlinden,* 111 Ariz. 378, 530 P.2d 1107 (1975) and *State v. Clayton,* 109 Ariz. 587, 514 P.2d 720 (1973), are cases governed by the former criminal rules and are not contrary to the comment.

Finally, appellant argues that the death penalty is cruel and unusual punishment under the constitutions of the United States and Arizona and that it is not consistent with the majority opinion in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), that the Arizona death penalty statute violates due process and that it is an undue delegation of legislative authority, and that in any event it was improperly applied in the appellant's case. We do not think it is necessary to answer these arguments nor the argument that appellant's sentence is excessive since the judgment of conviction and the sentence based thereon must be reversed for the reasons stated herein.

Judgment and sentence reversed with directions to grant appellant a new trial.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.