[Criminal No. 502. Filed March 30, 1921.]

[196 Pac. 449.]

## GASPER NEVAREZ, Appellant, v. STATE, Respondent.

1. HOMICIDE—COURT SHOULD DEFINE EVERY DEGREE OF WHICH ACCUSED CAN BE CONVICTED.—In a prosecution for homicide, the court should define for the jury every degree of homicide of which the accused can be convicted under the evidence.

2. HOMICIDE—EVIDENCE HELD TO WARRANT INSTRUCTION ON MANSLAUGHTER.—In a prosecution for manslaughter, where the evidence for the state showed murder and that for the defense showed self-defense, but the jury, if it believed part of the testimony for the state and part of that for the defense, could find that the deceased and defendant engaged, while drunk, in a fight during which defendant killed deceased, an instruction on manslaughter was proper.

3. CRIMINAL LAW—INSTRUCTION ON FLIGHT MUST SUBMIT EXPLANATION IF ANY.—In a prosecution for homicide, an instruction that the jury can consider the flight of accused as a circumstance should also submit the effect of an explanation of the flight, if any is given in the evidence.

---

3. On flight as creating presumption of guilt, see note in 39 L. R. A. (N. S.) 58.

4. Criminal Law—Omission of Explanation Accused was Scared from Instruction on Flight Held not Prejudicial.—In a prosecution for homicide, where the only explanation defendant gave for his flight was that he was scared, with no showing of any reason to be scared except fear of the consequences of his act, his explanation would tend to add to the weight of the evidence of the flight, and not to lessen it, so that the omission of reference to such explanation from the instrudtion given on the effect of flight was not prejudicial to him.

5. Criminal Law—Instruction on Flight Held Comment on Weight of Evidence.—In an instruction on flight, the statement that it tended in some degree to prove consciousness of guilt and is entitled to more or less weight went further than was proper, since the instruction should state merely that flight was a circumstance to be considered with other evidence in determining guilt, and given such weight as the jury considered it entitled to.

6. Criminal Law—Error in Instruction on Flight Held not to Require Reversal.—In an instruction on flight, erroneous statements that it tends in some degree to show consciousness of guilt and is entitled to more or less weight, in view of the latitude thereby allowed to the jury, is too slight an error to require a reversal of a conviction.

APPEAL from a judgment of the Superior Court of the County of Greenlee. Frank B. Laine, Judge. Affirmed.

Mr. E. V. Horton, for Appellant.

Mr. W. J. Galbraith, Attorney General, Mr. Geo. R. Hill and Mr. Wm. A. Harkins, Assistant Attorneys General, and Mr. Dave W. Ling, County Attorney, for Respondent.

McALISTER, J.—The appellant, Gasper Nevarez, charged by information with the murder of one Eusebio Galaves, was convicted of manslaughter and given an indeterminate sentence of from five to six years in the state's prison. From the judgment and from the order denying a new trial, this appeal is prosecuted.

The errors complained of deal entirely with the instructions. In his charge to the jury the court defined the different grades of homicide and submitted, along with other forms of verdict, one for manslaughter. Appellant contends that there is no evidence to support a verdict for manslaughter, and that only murder in the first and second degrees should have been submitted. There was no question but that the homicide charged was committed by the defendant. His plea was that of self-defense. The evidence was conflicting, but it substantially appeared therefrom that on the afternoon and evening of June 20, 1920, the defendant was at the home of deceased, in the town of Morenci, on three separate occasions somewhat under the influence of intoxicating liquor and with a pistol on his person. The purpose of his first visit, which was about 4 or 5 o'clock, seems to have been to ask his friend Atanacio Arras to leave the premises of deceased because another friend of his, by name Modesto Perez, had been beaten up there that afternoon by deceased. Arras and the defendant went away—not at the same time, however. The defendant returned some later in the afternoon—perhaps about 6 or 7 o'clock—and, according to the testimony of the wife of deceased, invited Galaves to search him, stating that he had no arms. Defendant left the second time, but was away only a few minutes, returning about 7 or 8 o'clock, when the shooting occurred. Each time defendant went only to the fence in front of deceased's yard, the latter remaining in the house until the defendant appeared the third time.

It appears from the testimony introduced by the state that the defendant, upon arriving there the third time, held one arm in his hand and called deceased, who was in the house, outside to fight; that the deceased, unarmed, went out of the house through the

gate to the road near where defendant was standing; and that as he approached defendant he was shot five times, death ensuing immediately. The wife of the deceased, Santos Ponce, and her nine year old daughter, Nerez Chavez, and one Concepcion Aguao, testified that deceased did not have a knife as he approached defendant, but that a knife, half open, was found near deceased's body about an hour after the shooting. Immediately after the homicide the defendant went to his room, changed part of his clothing and left Morenci. He was arrested five days later in Duncan, with a pistol in his pocket, denying at the time that he was Gasper Nevarez.

The evidence on the part of the defendant of the occurrences during the afternoon up to within a few minutes previous to the killing did not differ materially from that of the state, but the detailed account of the shooting and the incidents immediately preceding and leading up to it, given by the defendant and his witnesses, varied greatly from the state's testimony. It appeared from the evidence of the defendant, who was substantiated in most particulars by his witnesses, that he went to the fence in front of deceased's home to speak to his friend Atanacio Arras, who had returned to deceased's home, to persuade him to leave there, and that Arras told defendant he was going after a little, when deceased stood up and said that Atanacio Arras was not going because he (defendant) did not boss Atanacio. The deceased then went to the fence, and, while remaining inside with the defendant outside, hit the latter in the mouth with his hand. When defendant asked him why he did this, deceased went out of the yard toward defendant, who said he did not want to fight, but, in reply to defendant's question asked the second time as to why he hit him, the deceased hit him again and said that he did it because he could, or, according

to some of the witnesses, because "he had nuts," and at the same time pulled an open knife from his pocket. Upon seeing the knife, defendant started to run, when he stepped on a water-pipe and stumbled, falling almost to the ground with the deceased pursuing him. In a half upright position he fired the first shot, immediately rose to his feet, and, while backing away, fired four additional shots. On cross-examination he testified that he ran away when he got up because he was scared.

In the foregoing the facts are stated with sufficient particularity to enable the court to determine whether there was error in defining manslaughter, and in conformity therewith submitting it to the jury in an appropriate form of verdict. It is elementary that the court should define for the jury every degree of homicide of which the accused, under the evidence, can be convicted. *State* v. *Baker,* 13 Mont. 160, 32 Pac. 647; *Stokes* v. *Territory,* 14 Ariz. 242, 127 Pac. 742. The evidence in behalf of the state demanded that the court define and submit the crime of murder, which necessarily means that a conviction for that offense would have found support in the record, while the version of the affair given by the defendant and his witnesses, if believed by the jury, would have justified a verdict of not guilty. The court evidently was of the opinion that the jury might accept the testimony of neither side completely, but only in part, and in so doing be led to a verdict for neither murder nor an acquittal. For instance, if it believed, as it well might, that the defendant went to the home of the deceased for a legitimate purpose, to wit, to persuade his friend Arras to leave there, without any intention whatever of having trouble with deceased, and that while there he and deceased, both drinking, began a quarrel, resulting in a fight which ended in

the shooting, the only verdict that could properly have been reached was that of voluntary manslaughter, which is the "unlawful killing of a human being without malice, upon a sudden quarrel or in the heat of passion."

The cases cited by appellant—*Leseney* v. *State,* 13 Okl. Cr. 247, 163 Pac. 956, and *People* v. *Kelly,* 24 Cal. App. 54, 140 Pac. 302—as authority for his contention that the evidence in this case does not support manslaughter, are based upon entirely different facts. In the Leseney case the defendant was prosecuted for murder alleged to have been committed by intentionally administering poison to the deceased, and in reversing a conviction for manslaughter the Supreme Court of Oklahoma very properly said that, where the charge was murder by poisoning there could be no middle ground, that the defendant was either guilty of murder or nothing, that "the question for the jury under such circumstances is whether or not the accused is guilty of the offense charged, and not what the degree of the offense is, for wilful poisoning and shooting from ambush should be distinguished from other forms of homicide, for their very nature precludes every other hypothesis than that of deliberation and premeditation." The other case, *People* v. *Kelly,* is equally inapplicable. The defendant there was charged with murder and convicted of involuntary manslaughter, though he admitted the killing, but contended that it was committed in the defense of his person, which necessarily precluded the claim that it was not intentional, but the result of the commission of some unlawful act, not amounting to a felony, or of the doing of some lawful act in an unlawful manner, or without due caution and circumspection. Hence, in reversing the judgment, the court said that the case was entirely destitute of any element of involuntary manslaughter, and

that an instruction for this offense was as inapplicable to any theory deducible from the evidence as an instruction upon highway robbery would have been.

The giving of the following instruction is assigned as error:

"Evidence has been offered tending to show flight of the defendant after the time of the crime alleged against him in the information. If you find from the evidence that the defendant fled after having taken the life of the said Eusebio Galaves, such fact is a circumstance to be weighed by the jury, tending in some degree to prove consciousness of guilt, and is entitled to more or less weight according to the circumstances of the case."

It is not questioned that it was proper for the court to call the attention of the jury to the flight of the defendant as a circumstance to be considered by it in connection with the other evidence adduced in determining whether he was guilty of the crime charged, but it is contended first and principally that this instruction is faulty because it does not go far enough, in that it stops without directing the attention of the jury also to the explanation or reason given by the defendant for fleeing. This explanation appears in the following question by the county attorney on cross-examination, and defendant's reply thereto, namely:

"Q. That was also the reason you were running away, wasn't it, to keep the officers from beating you up? A. When I got up I was scared; then is when I run."

If the fright of one immediately following his commission of a homicide is such an explanation of his flight within a short time thereafter as would make it the duty of the court, after having called the attention of the jury to the flight, to submit therewith the explanation for it, the defendant's contention is well founded.

No reason for being "scared" was given by the defendant, and none otherwise appears in the record. There is no evidence of threatened violence, either by friends of the deceased or by any larger portion of the community. Merely to say that he fled because he "was scared," without giving any reason for being afraid, offers no explanation, at least none consistent with innocence. In fact, the fright of the accused immediately after he had committed a homicide in the presence of witnesses, where the record discloses no other facts which might have produced it, impels one to the conclusion that the killing itself was responsible for his state of mind. For the court to have told the jury to consider in connection with the flight itself defendant's explanation of it, when no facts justifying either, other than the killing, were shown, would have made the slight presumption of guilt which attaches to flight stronger, rather than have overcome it, and have given the jury ground to conclude that, having taken the life of a human being, he feared the result of a prosecution and fled to escape it. The court's failure, therefore, to submit to the jury defendant's explanation of his flight, if error at all, was in favor of the defendant and necessarily the assignment on this ground cannot be sustained.

"Where flight is unexplained, the giving of such an instruction [without the explanation] may be excused, though not justified, because it is within the power of the defendant to explain it and he has not done so." *People* v. *Jones,* 160 Cal. 358, 117 Pac. 176.

In the cases relied on by appellant the explanation of flight was entirely consistent with innocence, and, if true, rendered the fact of flight unimportant. In *People* v. *Jones, supra, State* v. *Schmulbach,* 243 Mo. 533, 147 S. W. 966, and *State* v. *Harris,* 232 Mo. 317, 134 S. W. 535, in which the judgments were reversed

because of the court's failure to direct the attention of the jury to the explanation of flight in connection with the instruction on flight itself, the evidence of the defendant in each case showed that after the killing feeling in the community against him was very strong, and that he fled in order to save his life, or at least himself from serious bodily injury at the hands of a mob. An explanation of this kind, when true, robs flight of the slight presumption of guilt it carries and necessarily should have been submitted to the jury as the defendant's offset to whatever importance might be attached to the flight itself.

Appellant urges further that the instruction on flight is a comment on the weight of the evidence, and therefore invades the province of the jury, whose sole duty it is to weigh the evidence. In saying to the jury that flight "is a circumstance to be weighed by the jury, tending in some degree to prove consciousness of guilt, and is entitled to more or less weight according to the circumstances of the case," the court, perhaps, went further than it should have gone, for the reason that it was for the jury to say whether, under the particular facts of the case, flight tended in any degree to prove consciousness of guilt or was entitled to any weight whatever. The instruction should have stated merely that flight was a circumstance to be considered by the jury, with the other evidence adduced, in determining whether the accused was guilty of the crime charged and given such weight as in the jury's judgment it was entitled to, for the jury should be permitted to decide for itself, without any intimation or suggestion from the court, how much importance shall be attached to any particular fact.

The terms "tends in some degree" and "is entitled to more or less weight," as used in the instruction, are erroneous as being a comment on the evidence,

but, because of the broad latitude allowed the jury, in the expressions "in some degree" and "more or less weight," used in placing the circumstance of flight before it, we think the error is too slight to be reversible, especially when the full instruction is read in connection with the court's complete charge.

It will not be necessary to discuss the remaining assignment of error dealing with still another instruction, inasmuch as it is apparent from a reading of all the instructions that no reversible error appears therein.

The judgment is affirmed.

ROSS, C. J., and BAKER, J., concur.