Argued February 27; affirmed March 18; rehearing denied
April 29, 1941

# STATE *v.* RAND
(111 P. (2d) 82, 112 P. (2d) 1034)

Before KELLY, Chief Justice, and BAILEY, BELT and ROSSMAN, Associate Justices.

*Elton Watkins*, of Portland, for appellant.

*Clarence Potts*, Deputy District Attorney, of Portland (James R. Bain, District Attorney, of Portland, on the brief), for respondent.

BAILEY, J. The defendant, Dewey Rand, has appealed from a judgment sentencing him to serve thirty days in jail and pay a fine of $100, entered on the verdict of the jury finding him guilty of driving an automobile while under the influence of intoxicating liquor.

The crime with which he was charged was committed April 13, 1940. About eight-fifteen o'clock in

the evening, on that date, the defendant was driving in a northeasterly direction on Sandy boulevard cut-off. This boulevard forms an intersection with Northeast Eighth avenue and Northeast Stark street, and all motor vehicles before entering the intersection from any of the three streets are required to come to a stop. The defendant, however, failed to make the stop and continued along Sandy boulevard through the intersection. A short distance beyond the intersection, where the boulevard is one hundred feet wide, his car swerved to the left and ran head-on into the automobile of LeRoy G. Gaither, who had previously thereto been proceeding in a southwesterly direction on Sandy boulevard and on observing the approach of the defendant's car had driven his own car as near to the curb as possible and come to a stop.

The state's testimony showed that when the defendant got out of his car after the collision he was unable to stand without support; that he was unable to find his driver's license, which was in his wallet; that his speech was not clear; that he had an odor of liquor on his breath; that he did not know that he was driving on the wrong side of the street; that in the opinion of several witnesses he was under the influence of intoxicating liquor; that he was not injured; and that upon arriving at the police station and being questioned he admitted that he had had three drinks of intoxicating liquor earlier in the evening. Police officers testified in regard to the physical observation test, as they termed it, which they had given the defendant at the police station. During a thirty-second standing test he was unable to stand straight, and swayed perceptibly. After walking a few steps and attempting to turn when requested he lurched and had to

"catch himself against a wall" to avoid falling. In a finger-to-nose exercise, "twice he did it O. K. with his right hand, and next he missed, and with his left hand he hit once here and once here and once down on his chin or neck there [indicating]." He was able to pick up coins from the desk and put them in his pocket, but had to be told a number of times before he would return them.

The defendant's explanation of the collision is that he fell asleep at the wheel of his car; that by force of the impact his head struck the wheel, stunning him; and that his unsteadiness on his feet was due to the injury to his head.

■ Seventeen assignments of error are noted in the defendant's brief on appeal. The first of these assignments is that the complaint in which he is charged with the crime above stated is fatally defective, in that the "name of the person prosecuting this action is not endorced upon" it, as required by § 26-1217, O. C. L. A. Neither the original complaint nor a certified copy thereof is in the record before this court, and therefore the matter of the sufficiency of the complaint can not be here considered.

Shortly after the collision, according to Mr. Gaither, an automobile arrived bringing two county officers, and a little later city police arrived. Mr. Gaither was asked if he knew the names of the officers, and answered: "Well, I know one was Mr. Weckert. I don't know the other man, the one that really got the license. You see, I don't know the police officers at all, none of them." On cross-examination, counsel for the defendant called Mr. Gaither's attention to that part of his testimony about not knowing any police officers and asked him if he had any acquaintance with Lieutenant

Schulpius, to which the witness responded that he had not. He was then asked if he was "related to him in any way, shape or form", and answered in the negative. After some discussion as to whether or not it was proper on cross-examination to inquire of Mr. Gaither his wife's maiden name, the defendant called Mr. Gaither as his witness and ascertained that the name of his wife prior to marriage was Vivian Durand and that she was not related to Lieutenant Schulpius. Following some colloquy, counsel for the defendant said: "And I am going to show that Mr. Durand married 'Tip' Schulpius's daughter, and that this man [Mr. Gaither] married Durand's sister." All this was conceded by the state.

We fail to find in the record any ruling of the court adverse to the defendant in connection with testimony regarding Mr. Gaither's possible relationship to police officers. What the defendant attempted to prove was admitted by the district attorney. Lieutenant Schulpius was not on trial or a witness in the case and was not, so far as the record discloses, in any way concerned with the arrest or prosecution of the defendant.

■■ Several witnesses testified as to the condition of the defendant immediately after the collision, describing how he acted, walked and talked. They were then questioned as to whether or not in their opinion the defendant was under the influence of intoxicating liquor. This was objected to on the ground that it called for opinion evidence on matters that should be left entirely to the jury. Whether or not any one is under the influence of intoxicating liquor may fairly be considered a matter of common knowledge and a question which a witness who is not an expert is competent to answer. His opinion is admissible, if he first shows that he

"had opportunity to observe and did observe that person's condition": *Guedon v. Rooney,* 160 Or. 621, 638, 87 P. (2d) 209, 120 A. L. R. 1298; *State v. Allen,* 120 Or. 652, 253 P. 371.

■ The objection of the state to a hypothetical question asked by the defendant of one of the state's witnesses on cross-examination was sustained on the ground that the question was unintelligible. Any possible error committed by the court in sustaining the objection was cured when the question was reframed to contain all the essential elements of the original hypothesis and was answered by the witness.

■ The defendant predicates error on the ruling of the court refusing to admit in evidence copies of several different issues of a publication of which he was one of the editors, attacking the police force of the city of Portland in general and Lieutenant Schulpius in particular. It is the theory of the defendant that the attack upon the police force had so incensed the members thereof that "they were out to get" him. In his brief he argues that: "These editorials were admissible for the purpose of showing that no policeman would read them without getting sore at the author." There is no evidence in the record that any of the witnesses had ever read or heard of the articles, or that the editorials concerned any of the witnesses. Likewise, there is absolutely no evidence of animosity of any member of the police force toward the defendant; especially was none shown on the part of those connected with his arrest and trial. The articles contained in the publication were entirely irrelevant to the charge against the defendant.

Numerous other assignments of error are made, to which we have given careful attention, but they are so

devoid of merit that to discuss them specifically would unnecessarily encumber and not enrich the reports. We can not see how any jury could have found any other verdict in this case than that rendered.

No error prejudicial to the defendant appears in the record, and the judgment is accordingly affirmed.

---

Petition for rehearing denied April 29, 1941

ON PETITION FOR REHEARING
(112 P. (2d) 1034)

■ BAILEY, J. In a petition for rehearing, the defendant, Dewey Rand, has shown to us that we were mistaken in stating in our former opinion that neither a certified copy of the complaint nor the original complaint filed against the defendant was included in the record lodged with this court. As a matter of fact, the original complaint was included in the judgment roll. We may therefore inquire into the sufficiency of the complaint.

This complaint was originally filed in the municipal court of the city of Portland, charging the defendant with committing a misdemeanor in violating a state statute by driving and operating an automobile upon a public highway of the state of Oregon, namely a street in the city of Portland, while under the influence of intoxicating liquor. The name of the district attorney was signed by one of his deputies for him, and the complaint was verified by the oath of LeRoy G. Gaither before the municipal judge.

■ This complaint meets the requirement of § 28-602, O. C. L. A., which provides that in a justice's court, likewise in a municipal court (§ 95-204, O. C. L. A.), a criminal action is commenced by the filing of a com-

plaint therein, verifed by the oath of the person commencing the action, who is thereafter known as the private prosecutor.

Section 26-1217, O. C. L. A., is relied upon by the defendant in his contention that the complaint was "fatally defective". That section provides that the name of every person who voluntarily appears before any justice of the peace to prosecute any person in a criminal action shall be endorsed upon the complaint "as private prosecutor" and if it be found by the justice or court trying the action or hearing the proceeding that the prosecution is malicious or without probable cause, that fact "shall be entered upon record in said action or proceeding by said justice or court." The following section, § 26-1218, O. C. L. A., provides that upon making the entry prescribed in the preceding section the justice or court must immediately render judgment "against the private prosecutor for the costs and disbursements of the action or proceeding, which may be enforced by execution, in the same manner as judgment in a civil action".

These two sections of the code last mentioned were enacted in 1882 (Laws 1882, page 13), under the following title: "An act providing for taxing private prosecutors with cost and disbursements of criminal actions when found to be malicious or without probable cause." It is apparent, both from the title and the body of the 1882 act, that the purpose of enacting that law was to deter the institution of prosecutions malicious or without probable cause, by imposing the costs and disbursements thereof as a penalty. Contrary to the defendant's contention, § 26-1217, *supra*, does not affect the validity of the complaint, which is governed by § 28-602, *supra*.

Counsel in his petition for rehearing again calls our attention to one of the assignments of error urged in his brief and on oral argument. That assignment concerns a remark of the court, made in granting the defendant an exception. The matter arose in this manner, after some discussion among the attorneys:

"Mr. Watkins: Now, what is your ruling?

"The court: My ruling is that you have thorough opportunity to inquire, and that you have already had it.

"Mr. Watkins: All right, note an exception and I will not pursue that any more.

"The court: All right, you may have an exception.

"Mr. Watkins: I note an exception. I will not pursue that any farther, and I note an exception on the ground that the court does not allow me to pursue that as long as I want to go into it and that it is prejudicial, not permitting me to bring out the exact number of feet that I want, and so I take an exception to the ruling.

"The court: You may have an exception. Have a good one while you are at it.

"Mr. Watkins: Well, your Honor, I object to that kind of remark, 'Have a good one while you are at it.'

"The court: Well, it is a good one.

"Mr. Watkins: Well, that is not proper for a court.

"The court: I will withdraw it and allow you to have any kind of an exception you wish.

"Mr. Watkins: I know, but 'Have a good one.'

"The court: I have withdrawn that.

"Mr. Watkins: I can't help it."

The remark to which counsel for defendants objects, it is apparent from the record as hereinabove quoted, was made after the court had allowed the exception and counsel continued to reiterate that he excepted. This court can not put into the mouths of trial judges the words to be uttered under all circumstances and conditions. The remark under consideration indicated

impatience, if anything, and not hostility toward counsel or his client. We can not see how the defendant's rights were thereby prejudiced.

Another assignment of error stressed by the defendant in his petition for rehearing is the refusal of the court to give one of the instructions requested by him. The requested instruction, quite lengthy, begins by telling the jury that the defendant has a right to present his theory of the case, and that the defendant has not only entered a plea of not guilty but has gone further, in that "he has taken the stand and has said to you that he was not drunk, that he was not intoxicated, that he was not under the influence of liquor in any particular, but on the other hand he admits that he had a couple of drinks at some time before the accident. That these drinks of liquor did not affect him in the least in his operation of the car, but that due to having worked hard that day and having had some trouble in sleeping due to an attack of an ailment bordering on flu or cold, or something of that kind, he was tired and that at the time he went to sleep and while in that condition he let his car get on the wrong side of the street which he admits is wrong, and that he is guilty of reckless driving and that that was the cause of the accident." The instruction then states that if the jury believes the defendant's testimony or if his testimony raises any doubt in the minds of the jurors "as to whether or not the state is right in contending that he was drunk", the jury should acquit the defendant.

■■■■ At the outset, it may be observed that the defendant was not charged with drunkenness or driving his car while drunk, but merely with operating an automobile while under the influence of intoxicating liquor.

Moreover, the requested instruction was argumentative and singled out particular items of the testimony, which, as this court has said, is a "bad practice and sometimes reversible error": *State v. Newlin*, 92 Or. 589, 182 P. 133. "It is not the province of the court to single out the testimony of particular witnesses in the case and thereby suggest to the jury the weight that should be given to it": *State v. Wisdom*, 122 Or. 148, 257 P. 826. No error was committed by the trial court in refusing to give the requested instruction. In the instructions given the court made it clear to the jury that it must be convinced beyond a reasonable doubt that the defendant was guilty of driving while under the influence of intoxicating liquor, before it could return a verdict of guilty.

There remains only one other assignment of error urged by the defendant in his petition for rehearing, namely, that the court erred in giving a certain instruction. There was no objection taken by the defendant to that instruction. Furthermore, we do not believe that the defendant was in any way prejudiced by the giving of the instruction. The charge given by the court must be considered as a whole, and it is manifest that the instructions in this case in their entirety fairly presented to the jury the question to be decided.

The petition for rehearing is denied.