No. 20,369.

FRED GUADALUPE TRUJILLO *v.* THE PEOPLE OF THE
STATE OF COLORADO.

(377 P. [2d] 948)

Decided January 21, 1963.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK
E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for de-
fendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as the de-
fendant, was convicted on both counts of an information
filed against him in the district court of El Paso county,
by which he was charged with burglary and assault
with intent to commit robbery. The trial court sen-

tenced him to a term in the state penitentiary on each of said counts, the terms to run consecutively.

Defendant seeks review by writ of error and urges as grounds for reversal:

(1) That the evidence was insufficient to establish his guilt, and that his motion for a directed verdict at the close of all the evidence should have been sustained.

(2) That the trial court erred in giving an instruction to the jury with reference to defendant's flight from the scene of the crime.

The substance of the evidence on behalf of the people is as follows: On June 30, 1961, Miss Maud Forshee, then 87 years old, lived alone at 521 East Kiowa Street, Colorado Springs, Colorado. About 9 o'clock that evening she heard a noise in the leaves in the flower bed next to her diningroom. She immediately phoned the police from the diningroom and, just as she set the telephone down upon completion of that call, a man came toward her from the kitchen. The man pushed her down, slapped her a couple of times, and said, "I want your money, where is your money?" Maud Forshee told the man, "I have no money, I am an old woman on a pension," whereupon he dragged her about twenty feet out the back door to a small shed attached to the kitchen. The man then apparently heard the police outside and left. Miss Forshee's phone call had been received by the Colorado Springs police dispatcher at approximately 9:11 P.M. and he immediately dispatched a car by radio to 521 East Kiowa Street. The police officers who responded to the call went to the back yard of 523 East Kiowa, from which a man was seen leaving 521 East Kiowa. At that time the police heard a woman moaning and calling for help from the rear porch of 521 East Kiowa. As soon as the officer's flashlight hit the man leaving the house he started running through the back yards in the area. The police officer made positive identification of defendant as the man he saw coming out of the door from the room in which the victim was

later found. He caught defendant's face in his flashlight from a distance of ten feet. Shortly thereafter defendant was spotted lying in the grass under a lilac bush. When ordered by one policeman to stay there he started running and leaped three fences between the back yards and finally came to rest when first a warning shot had been fired into the air, and then a second shot fired by the policeman hit him in the leg. At the trial Maud Forshee testified that she couldn't see much out of one eye because of glaucoma, and that her other eye was very nearsighted. However, she also testified that defendant's "face and complexion are just the same" as that of the man who knocked her down in her home and asked her for her money and that defendant was definitely the man "unless he has a twin."

Defendant took the stand and testified in substance that just prior to his arrest he went to East Kiowa street with Tommy Wallace. He said they parked the car some distance from where the incident here involved occurred and walked on East Kiowa to the home of Wallace's father. Wallace went into his father's house to borrow some money while defendant waited outside. He claimed that while he was waiting there a police car arrived on the scene. Since defendant had previously been convicted of possession of marijuana in March of 1958, he just panicked at the sight of a police car and began to run, and jumped over a fence and hid. He testified that someone then came near him with a gun and saw him, and he started to run again; that he never heard anyone order him to stop, but he did hear some shots and finally had to stop when he was hit in the back of the right leg. The defendant claimed that he never entered Maud Forshee's home; he never assaulted her or asked her for money, and that he never even saw her prior to that day in court when each of them testified regarding this case.

The defense also called Tommy Wallace to the stand and he basically backed up defendant's story as to how

defendant happened to be in that area on that night. However, Wallace also testified that, after leaving defendant on the street and going into his own father's home, he had no idea of what defendant did. The next thing he knew he heard some kind of a commotion and shots outside his father's house.

■ ■ The foregoing statements reveal that the only issue involved was that of identity, and the people's evidence if believed by the jury was ample to establish conclusively the guilt of defendant. The instruction on "flight" was correct in form, and the evidence presented warranted its submission to the jury. The jury was not impressed with the explanation defendant offered as to his conduct; the trial court was not persuaded thereby, nor are we.

The judgment is affirmed.

MR. JUSTICE PRINGLE not participating.