PEOPLE *v.* JONES.

1. HOMICIDE—MANSLAUGHTER—EVIDENCE—HEARSAY—RES GESTAE.
   Testimony that homicide victim's children had told witness immediately after a shooting and they had left the home that their mother had been shot *held*, properly admitted in prosecution on charge of manslaughter, admission of such evidence being permissible as a *res gestae* exception to the hearsay rule (CL 1948, § 750.321).

2. CRIMINAL LAW—RES GESTAE.
   Acts and deed emanating from the transaction as long as it con-

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  20 Am Jur, Evidence § 667.
[3]  58 Am Jur, Witnesses § 598.
[4]  58 Am Jur, Witnesses § 584 *et seq.*
[5]  58 Am Jur, Witnesses § 683.
[6]  58 Am Jur, Witnesses § 767.
[7]  53 Am Jur, Trial § 710.
   Flight as evidence of guilt. 25 ALR 886.
[8]  53 Am Jur, Trial §§ 599, 776.
[9]  5 Am Jur 2d, Appeal and Error § 623.
[10]  53 Am Jur, Trial §§ 677, 748.
[11]  53 Am Jur, Trial §§ 684, 688.
[12]  5 Am Jur 2d, Appeal and Error § 808.
[13]  5 Am Jur 2d, Appeal and Error §§ 838, 883.
[14]  5 Am Jur 2d, Appeal and Error § 850.

tinues become part of it, the time limits not being arbitrary, and are admissible in evidence as *res gestae.*

3. WITNESSES—REFRESHING RECOLLECTION—IMPEACHMENT.

Refreshing the recollection of a witness may be done by permitting the witness to read the document intended to trigger the memory, since then the content does not go before the jury, or, the jury may be withdrawn and the statement read aloud to the witness, either of such procedures not being one to impeach the witness.

4. HOMICIDE—EVIDENCE—REFRESHING RECOLLECTION OF WITNESS.

Testimony of 7-year-old daughter of homicide victim that defendant had come home the day of the shooting, asked for his gun, obtained it, went into the bedroom with her mother, a loud noise was heard from the bedroom, defendant ran out, got into his car and drove away, after which she went into the bedroom, saw blood and ran out of the house, all of which was presented after her memory had been refreshed out of the presence of the jury, *held,* properly admitted in evidence.

5. SAME—REFRESHING RECOLLECTION OF WITNESS—IMPEACHMENT.

Careful examination of procedures employed in presenting impeachment testimony as to 11- and 9-year-old children of homicide victim when refreshment of recollection in the absence of the jury proved unfruitful *held,* not to reveal reversible error.

6. CRIMINAL LAW—EVIDENCE—CREDIBILITY OF WITNESSES—IMPEACHMENT.

A prosecuting attorney when obliged to produce before the jury all facts which tend to prove innocence as well as guilt, and, in certain instances, to produce all eyewitnesses, cannot always vouch for the credibility of the witnesses, and may, if the witness is hostile, impeach the witness by showing contradictory statements, not for the purpose of establishing the substantive facts of guilt, but to permit the jury to value the testimony at its real worth.

7. HOMICIDE—INSTRUCTION—EVIDENCE—FLIGHT.

Instruction in prosecution for manslaughter that flight from scene of homicide was not a circumstance sufficient in itself to establish guilt since it was quite as consistent with innocence of the defendant, *held,* proper, where there had been placed before the jury evidence of hasty departure.

8. SAME—INSTRUCTION—CREDIBILITY OF WITNESSES.

Instructions given in prosecution for manslaughter relative to credibility of witnesses *held,* not prejudicial, where it was

fairly laid before the jury the matters the jury must consider
in their deliberations.

9. APPEAL AND ERROR—QUESTIONS REVIEWABLE—REQUEST TO CHARGE.
    Contention that jury should have been given specialized instruc-
    tion on weight to be accorded testimony of children is not dis-
    cussed on appeal, where defendant had not requested such a
    specialized charge and general instructions were given on cred-
    ibility of witnesses and weight to be given their testimony.

10. CRIMINAL LAW—INSTRUCTIONS—BURDEN OF PROOF.
    Instruction on matter of burden of proof in prosecution for
    crime that burden of proof lies on the prosecution in that
    it was necessary to prove defendant guilty beyond a reasonable
    doubt *held,* fairly to apprise jury as to where the burden
    reposed, even though the term *burden of proof* was not used.

11. SAME—INSTRUCTIONS—PRESUMPTION OF INNOCENCE—BURDEN OF
    PROOF.
    The fact that jury is charged as to presumption of innocence in
    a prosecution for crime lays down no test for the sufficiency
    of the charge on the burden of proof essential to establish
    guilt.

12. HOMICIDE—WITNESSES—PREJUDICE.
    Fact that prosecutor had a witness, mother of defendant, sign
    her name on a piece of paper for apparent comparison to a
    statement she purportedly signed earlier but did not remember,
    without pursuing the matter further, *held,* not to have preju-
    diced defendant in prosecution for manslaughter.

13. SAME—EVIDENCE.
    Evidence in the record on appeal in a prosecution for man-
    slaughter that establishes testimony was adduced on each
    allegation contained in the information and that there was
    sufficient evidence before the jury so that it might find him
    guilty beyond a reasonable doubt *held,* to show the verdict of
    guilt was not contrary to law, the argument that it was
    against the great weight of the evidence being a civil test.

14. SAME—NEW TRIAL—MANSLAUGHTER.
    Denial of new trial in prosecution for manslaughter *held,* proper,
    where defendant's allegations of error are found to be either
    without merit or without prejudice.

Appeal from Recorder's Court; Ricca (John A.),
J. Submitted Division 1 October 5, 1965, at Detroit.
(Docket No. 58.) Decided November 15, 1965.

Theodore Jones was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, *Rheo C. Marchand,* Assistant Prosecuting Attorney, for the people.

*Goldfarb & Hudnut (Albert A. Goldfarb,* of counsel), for defendant.

FITZGERALD, J. On June 29, 1963, 29-year-old Margaret Mary Martin was found dead from a gunshot wound in her residence at 2926 Webb in the city of Detroit. The time was approximately 10:15 in the evening.

Residing at the same address were the deceased's three children, Michael, 11; Ira, 9; and Gloria, 7; the defendant herein, Theodore Jones, 35; his mother, Sally Jones; and a cousin, Reno Allen.

On that evening, two patrolmen of the Detroit police department answering a radio dispatch to the Webb street address, discovered the body of the deceased. The only persons present were the three children, a baby, and Reno Allen. The defendant was not found there.

Two days later, defendant Theodore Jones appeared before the authorities with his attorney and on July 2, 1963, a complaint and warrant charging him with murder in the first degree[1] was issued. This was reduced to murder in the second degree[2] and ultimately to manslaughter,[3] the charge upon which defendant was tried in February, 1964. The jury returned a verdict of guilty of manslaughter.

1 CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).—REPORTER.
2 CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).—REPORTER.
3 CL 1948, § 750.321 (Stat Ann 1954 Rev § 28.553).—REPORTER.

After denial of a motion for a new trial, defendant was sentenced to 10–15 years in prison.

Appeal was granted by the Supreme Court and subsequently transferred to this Court, defendant assigning numerous allegations of error in his trial, dealing largely with admissibility of evidence and jury instructions.

Defendant contends that it was error for the court to rule that witness Reno Allen could testify as to what the children told him after he chased them down the block, shortly after the shooting.

In essence, witness Allen testified that after a "boom" was heard in the house, he saw the children running down the street and went after them. In answer to the prosecution's question, "What did the children say?", the witness replied, "Said, 'My mama was shot.'" Objection by defense was overruled and the testimony admitted as part of the *res gestae,* which ruling defendant now contends was error.

The testimony, we believe, was properly admitted as a *res gestae* exception to the hearsay rule. *People v. Kayne* (1934), 268 Mich 186, citing Wharton on Criminal Evidence (9th ed), § 262, "And as long as the transaction continues, so long do acts and deeds emanating from it become part of it, so that, describing it in a court of justice, they can be detailed. * * * Nor are there any limits of time within which the *res gestae* can be arbitrarily confined."

In the instant case, the children were indorsed,[4] called, and testified and though further error is assigned in relation to their testimony, we find that admitting testimony of Reno Allen as to what they told him immediately following the shooting was proper.

The defendant next claims that the trial court erred in allowing the procedure employed by the

---

[4] CL 1948, § 767.40 (Stat Ann 1954 Rev § 28.980).—R<small>EPORTER</small>.

prosecution in impeaching witnesses Gloria, Ira and Michael Martin.[5] The principal claim rests on the alleged violation of the requirements imposed by *People* v. *Thomas* (1960), 359 Mich 251.

In *Thomas,* statements which were materially damaging to the defendant were placed before the jury under the guise of refreshing the memory of a witness. The Supreme Court found reversible error stemming from the fact that the testimony in question was actually used to impeach the witness rather than to refresh her recollection, and no proper foundation had been laid for such impeachment.

In distinguishing the proper procedures for refreshing the recollection of a witness and impeaching that witness, the Court made the following statement (p 262).

"If, in truth, it is the desire of counsel merely to 'refresh' the recollection of a witness it may be done by permitting the witness himself to read the document intended to trigger the memory, under which procedure, of course, its content does not go before the jury, or to withdraw the jury and read the statement aloud, the procedure necessarily employed when the witness is blind or illiterate. Either procedure accomplishes the refreshing of memory, if that is, in truth, the purpose, and that without compromising the fundamental guaranties of a citizen accused of crime."

A careful review of the record demonstrates that this suggested procedure was carefully followed in reference to witness Gloria Martin, there being no indication that impeachment was either intended or achieved.

During the course of the direct examination of Gloria Martin the jury was excused and her memory was refreshed in their absence with reference to

---

[5] CL 1948, § 767.40a (Stat Ann 1954 Rev § 28.980[1]).—REPORTER.

statements she allegedly made to Detective Garton on the night of her mother's death. She acknowledged having made the alleged statements and stated that they were true. The jury was recalled and Gloria testified in substance that defendant had come home on the day of the shooting and "asked for his gun," and later, after securing it, had gone into the bedroom with her mother. She further testified that after she heard a loud noise come from the bedroom, defendant ran out, got into his car and drove away, following which she went into the bedroom, saw blood and ran out of the house. Subsequent cross-examination by defense counsel did not shake her testimony in any substantial degree.

The attempt to refresh the recollection of witness Gloria Martin was made according to the prescribed procedures and was successful. The requirements established in *People* v. *Thomas* and discussed in *People* v. *Knox* (1961), 364 Mich 620, were not violated.

Regarding the testimony of Ira and Michael Martin, the record demonstrates that refreshment of recollection in the absence of the jury having proved unfruitful, a foundation for impeachment of these witnesses was properly laid and impeachment testimony was subsequently offered and received. No reversible error is revealed by careful examination of the procedures employed.

As stated by Gillespie in 1 Michigan Criminal Law & Procedure (2d ed), § 441:

"Where the prosecutor is bound to produce before the jury all facts which tend to prove not only guilt but also those which tend to prove innocence, and in certain cases to produce all eyewitnesses, he cannot always vouch for the credibility of the witnesses he places upon the stand and, when such a witness is clearly hostile, it is competent to impeach him by showing contradictory statements, not for the pur-

pose of establishing the substantive facts of guilt, but that the jury may value his testimony at its real worth."

The crucial distinction between refreshing the recollection of a witness and impeaching that witness as discussed in *Thomas* was not ignored. The record demonstrates that a proper foundation was laid for the admission of impeaching testimony and that the trial judge made it clear to the jury that such testimony was not admitted for the purpose of showing substantive facts of guilt but only as bearing on the credibility of the witnesses. *People* v. *Elco* (1902), 131 Mich 519; *People* v. *Babcock* (1942), 301 Mich 518.

Allegations of error are further ascribed to the court's charge to the jury, specifically in regard to instructions regarding flight from the scene of a crime; failure to instruct on the weight to be given to testimony of children; on the burden of proof in a criminal prosecution and on credibility of witnesses.

Regarding the instruction on flight, we feel that the defendant was not prejudiced by the court's instructions read as a whole. Evidence of hasty departure had indeed been placed before the jury and we find no error in the court's statement that:

"The court must instruct you that as to what force this alleged flight may be given by you. That means as to what weight you will give to it. The court charges you that the flight of a person from a scene of an offense is not substantive proof or substantive evidence of guilt. In other words, it may not, it is not a circumstance sufficient in itself to establish guilt, as it may be quite as consistent with innocence of the defendant."

The other instructions, relating to credibility of witnesses and the weight to be given their testimony,

are not prejudicial. The instructions fairly lay before the jury the matters they must consider in their deliberations. Regarding the weight to be given to the testimony of children, the record discloses no instruction was requested in this sphere and the case relied upon by defendant in this realm, *McGuire* v. *People* (1880), 44 Mich 286, is not in point.

Defendant's objections to the court's charge on burden of proof are circuitous and, viewed in context, are without substance. Specifically, defendant asks, "Was the court in error in failing to give a specific instruction relative to the burden of proof?" stating that such an instruction on the burden of proof was requested.

In discussing with the court the proposed instructions for the jury, defendant's counsel asked this: "Fourth, defendant need not prove his innocence in any degree whatsoever." For purposes of his argument, we will assume that this was his request for an instruction on burden of proof. The court's response indicates it was granted.

Gillespie in 2 Michigan Criminal Law & Procedure (2d ed), § 661, states, "It is reversible error not to give instructions relative to the burden of proof although no request is made therefor, and the rule is not changed even though an excellent instruction is given on the presumption of innocence," citing *People* v. *Orr* (1928), 243 Mich 300, which indeed stands for that proposition.

*Orr,* however, lays down no test for the sufficiency of the charge on the burden of proof, other than saying a lack of it is not cured by instructions on presumption of innocence.

The charge before us is replete with references to presumption of innocence and the question remains as to whether the requisite charge on burden of proof is present. Read as a whole, we believe that the jury

was fairly apprised that the burden of proof lies on the prosecution.

The court in its charge made this statement, "Ladies and gentlemen, it is incumbent upon the prosecution to prove the defendant guilty without any help from his side of the table whatsoever." Standing alone, this would not be sufficient to adequately instruct the jury on burden of proof, but the concluding remarks of the court, uttered just before the jury retired to deliberate, incontrovertibly places the burden upon the State:

"Now, ladies and gentlemen, in this case there are only two possible verdicts. If the people have proven to you the elements of the crime as I have outlined them to you and proven them beyond a reasonable doubt, then it is your duty to render a verdict of manslaughter or guilty as charged.

"Now, if you find that the people have failed to prove the defendant guilty beyond a reasonable doubt as I have defined that term to you, then you will find the defendant not guilty."

We feel that these instructions are susceptible of no other interpretation than that the jury was fairly apprised that the State had the burden of proof in this prosecution. We are aware of no mandate that the term, "burden of proof" itself must be used and the fact that the instruction was not so exhaustive as defendant might, in retrospect, have wished, is not error.

A further allegation of error regards the prosecution's action in having witness Sally Jones sign her name on a piece of paper for apparent comparison to a statement she purportedly signed earlier but did not remember. We do not find that this prejudiced defendant's case, nor is the fact that the prosecution elected not to pursue the matter prejudicial.

Defendant's final contentions are that the verdict of the jury is contrary to law and the great weight of evidence and that the trial court erred in denying defendant's motion for a new trial in light of the aforementioned allegations. A review of the record establishes that testimony was adduced on each allegation contained in the information and that sufficient evidence was before the jury so that it might find him guilty beyond a reasonable doubt. The argument that it was against the great weight of evidence is a civil case test. *People* v. *Williams* (1962), 368 Mich 494; *People* v. *Schram* (1965), 1 Mich App 279.

Defendant's allegations of error having been found to be either without merit or without prejudice, the denial of a new trial was proper.

Affirmed.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.