435 P.2d 864

**The STATE of Arizona, Appellee,**
v.
**Jerome L. RODGERS, Appellant.**
**No. 2 CA–CR 96.**

Court of Appeals of Arizona.
Dec. 28, 1967.
Rehearing Denied Feb. 27, 1968.
Review Granted March 19, 1968.

**31**

Darrell F. Smith, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Wesley E. Polley, Bisbee, for appellant.

MOLLOY, Judge.

This is an appeal from a judgment of guilt and order for probation as to a charge of assault with a deadly weapon.

The defendant was an enlisted man in the United States Army, stationed at Fort Huachuca, Arizona, and, on the evening in question, was the driver of a car in which there were three female passengers, two of whom were members of the Women's Army Corps. The owner of the car, known by the defendant only as "Joan," rode in the front seat as a passenger. The car, while stopped on a street in the City of Sierra Vista, was approached by three male enlisted members of the United States Army. One of these three was the alleged victim of this assault whose name is Walter Carrigan.

As Carrigan approached the vehicle, one of the female passengers in the back seat of the car, Jennifer Jones, exclaimed "Oh, my God, it's the guy who hit me in the E. M. Club." After reaching the car, Carrigan began talking to Jennifer Jones and some kind of an altercation between them developed, during which the defendant shot Carrigan in the cheek with a 22-caliber pistol. As Carrigan fell back from the shot, the defendant immediately drove off, and went to the quarters which were provided to him by the United States Army, where he was arrested approximately two hours after the shooting.

The defendant testified he shot Carrigan to stop him from badly beating Jennifer Jones. Jennifer Jones, however, testified Carrigan neither struck her nor bruised her on the occasion in question, but that he was trying to pull her from the vehicle when the defendant shot him.

The defendant first complains the prosecution attempted to brand him as a "bad guy" by implying he, a married man, was out with three women other than his wife on the occasion in question. The only evidence admitted over objection in this regard were answers to questions propounded to the defendant by the prosecution as to where his wife was on the evening in question (his answer was she was in the process of moving to Fort Huachuca), and as to whether Jennifer Jones was married (the defendant answered he didn't know whether she was or not).

The principal defense postulated for this shooting is that the defendant was seeking to defend Jennifer Jones from serious bodily harm. The nature of this charge and this defense brought into issue the state of mind of the accused. It is our view the evidence as to the whereabouts of the defendant's wife and as to the marital status of Jennifer Jones had relevancy as to what may have been in the defendant's mind as he was shooting Carrigan. Proof of state of mind is usually by circumstantial evidence and the nature of the relationship between the defendant and the person whom he contended he was defending would be a circumstance bearing upon this critical issue. For instance, it is somewhat more unlikely that the defendant was shooting another man in the face to defend a woman he hardly knew, as opposed to a situation in which he might have been seeking to defend a wife or paramour. We hold the questions complained of only elicited information necessary to "complete the story" with which the court and jury were concerned. Cf. State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965); State v. Norgard, 6 Ariz.App. 36, 429 P.2d 670 (1967).

The defendant also complains of the propounding of a question to three defense character witnesses. These witnesses

had testified on direct examination that the defendant did not have the reputation of being a turbulent man, but rather as a "good man." On cross-examination, they were asked if they knew that on the occasion in question he was "out with three women other than his wife." The first time it was asked, it was answered in the negative without objection. As to the other two witnesses, the defense objected, the objection was sustained, and the jury was instructed to disregard any implications arising from the question. We hold whatever error was committed by the asking of the question was cured by the admonition of the court.

The defendant complains of the following instruction, given by the trial court:

"The flight of a person immediately after the commission of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

This instruction was patterned after a California jury instruction.[1] Such an instruction is required by statute in California when there is evidence of flight.[2] The defendant attacks the giving of the subject instruction on the basis that it is not supported by the evidence and is a violation of the constitutional provision that judges shall not comment upon the evidence (Ariz. Const. art. 6, § 27, A.R.S.).

■ In considering the defendant's objections, it is pertinent to note that in this state we do not have the California statute requiring the giving of a "flight" instruction nor does California have a constitutional provision similar to our article 6, section 27, prohibiting comment on the evidence.[3] Hence, California cannot provide controlling authority for the problem at hand.

■ Generally, it is not proper when giving instructions to the jury to single out particular evidence and instruct the jury as to what inferences may be drawn from such evidence. 53 Am.Jur. Trial § 597, at 472; 88 C.J.S. Trial § 277, at 747–749. In the same jurisdictions recognizing this general principle, however, there are many decisions upholding the right of the trial court to give an instruction on flight, i. e., compare Armijo v. People, 134 Colo. 344, 304 P.2d 633 (1956), with Trujillo v. People, 151 Colo. 373, 377 P.2d 948 (1963); People v. Laczny, 63 Ill.App.2d 324, 211 N.E.2d 438 (1965), with People v. Spaulding, 309 Ill. 292, 141 N.E. 196 (1923); State v. Hill, 239 Iowa 675, 32 N.W.2d 398 (1948), with State v. Barton, 258 Iowa 924, 140 N.W.2d 886 (Iowa 1966); People v. Smith, 363 Mich. 157, 108 N.W.2d 751 (1961), with People v. Jones, 1 Mich.App. 633, 137 N.W.2d 748 (1965); State v. King, 334 S.W.2d 34 (Mo. 1960), with State v. Aubuchon, 394 S.W.2d 327 (Mo.1965); State v. Petrolia, 45 N.J. Super. 230, 132 A.2d 311 (1957), with State v. Evans, 107 N.J.L. 474, 153 A. 579 (1931); Wingfield v. State, 89 Okl.Cr. 45, 205 P.2d

1. California Jury Instructions, Criminal, No. 36 (Revised) 1966 Pocket Parts, at 51.

2. § 1127c, the Penal Code of California, reads as follows:
"In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:
"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.
"No further instruction on the subject of flight need be given."

3. Calif.Const. art. 6, § 10 provides that the trial court " * * * may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause."

320 (1949), with Denney v. State, 346 P.2d 359 (Okl.Cr.App.1959); State v. Duggan, 215 Or. 151, 333 P.2d 907 (1958), with State v. Rand, 166 Or. 396, 111 P.2d 82, 112 P.2d 1034 (1941); State v. La Porte, 58 Wash.2d 816, 365 P.2d 24 (1961), with State v. Frandsen, 176 Wash. 558, 30 P.2d 371 (1934); State v. Pietranton, 140 W.Va. 444, 84 S.E.2d 774 (1954), with State v. Wright, 130 W.Va. 336, 43 S.E.2d 295 (1947).

■ Giving a special instruction on flight appears to be an exception to the general proscription against informing the jury as to inferences that may be drawn from particular pieces of evidence. See 34 N.C.L.Rev. 367, 373 (1956). In our own state, though generally the singling out of evidence so as to give it undue prominence is prohibited, State v. Eisenstein, 72 Ariz. 320, 331, 235 P.2d 1011 (1951), the courts have nevertheless endorsed the giving of a flight instruction when there is evidence of flight immediately following the commission of a crime. State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952); Nevarez v. State, 22 Ariz. 237, 196 P. 449 (1921). In State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963), rev'd on other grounds, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 (1964), the Supreme Court of our state in a three–two opinion upheld the giving of a flight instruction and indicated, inter alia, that even if the instruction were not proper, it was not reversible error.

State v. McGill, 101 Ariz. 320, 419 P.2d 499 (1966), holds that when there is no evidence of flight, it is error to give the instruction. There is nothing in *McGill* to indicate that if there is evidence of flight in the record, the giving of the instruction would be error. A decision of this court,

State v. Douglas, 2 Ariz.App. 178, 407 P.2d 117 (1965), upholds the giving of a flight instruction even though the defendant " * * * went only a short distance and was not trying to conceal himself from arrest * * *." 2 Ariz.App. at 180, 407 P.2d at 119. See also Hamby v. State, 71 Ga.App. 817, 32 S.E.2d 546 (1944).

In this case, the defendant gave an explanation of his abrupt departure in these words:

"A. Well, I noticed the two gentlemen that was with him. They both put their hands in their pocket. They were bulged. Their pockets were bulged. And I fired, and I left the area.

\* \* \* \* \* \*

"A Well, I went back home. Because, I was afraid that the other two gentlemen would have caused some bodily harm to me."

In Nevarez v. State, supra, our Supreme Court, in dicta, indicated that if a reasonable explanation of flight is given by the defendant, such explanation should also have been called to the jury's attention in the instruction on flight.[4]

Were it not for the pronouncements of our own Supreme Court approving the flight instruction, this court would be inclined to agree with the following statement of the Colorado Supreme Court:

"It may here, however, be further observed that, according to reason and the best considered authorities, such an instruction [on flight] is rarely advisable and should never be given unless the peculiar facts of the case appear to make it essential. It generally impinges upon the rule that particular portions of the evidence should not be singled out and

4. In the landmark case of Hickory v. United States, 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474 (1896), the Supreme Court held that an instruction on flight which related to the jury the "axiom" that "the wicked flee when no man pursueth, but the innocent are as bold as a lion" (16 S.Ct. at 330) was erroneous. This was in the light of the existing power of a federal judge to comment

on the evidence. This power was tempered by the rule that the judge must submit the evidence to the jury "calmly and impartially" (16 S.Ct. at 333). The Court said that the flight instruction given was neither calm nor impartial, but "deprived the jury of the light requisite to safely use these facts as means to the ascertainment of truth." (16 S.Ct. at 333.)

emphasized by special instructions." Robinson v. People, 114 Colo. 381, 165 P.2d 763, 765 (1946).[5]

We find sufficient indication of flight—consisting of the defendant's precipitate departure from a shooting he contended was justified and his failure to report the incident to law-enforcement officials—to justify the instruction. In view of the approval given by our Supreme Court to the flight instruction, as late as State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963), and because there was no objection to the instruction on the grounds it failed to include the defendant's explanation, State v. Evans, 88 Ariz. 364, 369, 356 P.2d 1106 (1960), we find no error. If it were error, then in view of the permissive tenor of the instruction ("*may* be considered"), we believe it would be appropriate to regard any such error as non-prejudicial in accordance with the view taken in State v. Owen, supra, 94 Ariz. at 412, 385 P.2d 700. The Colorado decisions finding fault with the flight instruction also came to the conclusion that the giving of the instruction was harmless error. Robbins v. People, supra, 350 P.2d at 822.

The defendant contends error was committed in instructing the jury that a 22-caliber pistol is a deadly weapon. There was no error in so doing. State v. Seymour, 101 Ariz. 498, 421 P.2d 517 (1966); Gonzalez v. State, 21 Ariz. 385, 188 P. 872 (1920). These are "loaded pistol" cases and do not specifically indicate the caliber of the weapon. We see

no basis for a distinction because of the caliber of this weapon. Decisions holding a 22-caliber gun to be a deadly weapon are: People v. Sandoval, 222 Cal.App.2d 348, 35 Cal.Rptr. 227, 229 (1963); and People v. Young, 105 Cal.App.2d 612, 233 P.2d 155 (1951). It is not a violation of the constitutional guarantee of a jury trial to instruct the jury on matters of law. Singh v. State, 35 Ariz. 432, 280 P. 672, 67 A.L.R. 129 (1929).

The defendant contends there was error in not giving an instruction that would have told the jury that if they had a reasonable doubt as to whether the defendant shot Carrigan to preserve the peace, *or* to prevent the commission of an offense, *or* in defense of Jennifer Jones, then the jury should acquit him. The court did instruct the jury as to the burden the State had in proving beyond a reasonable doubt all elements of the crime charged and further instructed the jury, inter alia, that if the jury had any reasonable doubt as to whether the defendant had acted in the defense of another, he should be acquitted.

The defendant's contention is based upon the provisions of A.R.S. § 13–246 [6] which enumerates various situations in which the use of violence might be justified. At the conclusion of the trial, after all instructions had been given to the jury, in making objections to the instructions given, the defendant's counsel stated insofar as his request for this instruction was concerned:

"Well, in view of the fact that the Court gave an instruction substantially similar to this, I have no objection."

\* \* \* \* \*

"3. For preservation of the peace, or to prevent the commission of an offense.

\* \* \* \* \*

"6. In self-defense, or defense of another against unlawful violence to his person or property.

"B. Only that degree of force may be used which is necessary to accomplish the lawful purpose."

---

5. Although the *Robinson* decision has never been expressly overruled, and was followed in Robbins v. People, 142 Colo. 254, 350 P.2d 818, 822 (1960), the flight instruction appears to be back in favor in Colorado. See Mills v. People, 146 Colo. 457, 362 P.2d 152 (1961); and Trujillo v. People, 151 Colo. 373, 377 P.2d 948 (1963).

6. A.R.S. § 13–246, in pertinent part, reads as follows:
   "A. Violence used to the person does not amount to assault or battery in the following cases:

We agree with this analysis. There was only one possible justification advanced by the defendant for his shooting of Carrigan and that was conduct of Carrigan towards Jennifer Jones. Under the law, the defendant would not be justified in his violence if he used more force than appeared necessary under the circumstances. We believe the jury was adequately instructed as to the gist of this defense.

The defendant complains that the court erred in repeating an instruction that no more force could be used than was reasonable under the circumstances. Generally, mere repetition of a principle of law (when instructing the jury) is not error. 53 Am.Jur. Trial § 559, at 444; 88 C.J.S. Trial § 334, at 873–876. In this case, one instruction on the permissible degree of violence which properly stated the law was given at the request of the State. The defendant requested an instruction that violence does not amount to assault and battery when committed " * * * for preservation of the peace, *or* to prevent the commission of an offense, *or* in the defense of another against unlawful violence * * *." (Emphasis added.) The court granted the request but added the qualification in the language of A.R.S. § 13–246, subsec. B that only such force as was necessary to accomplish the lawful purpose was justified. The instruction requested by the defendant would have been misleading without this qualification and this additional statement of the principle of law in question was a necessary repetition un-der the circumstances. We see no error in this regard.

The defendant complains the court refused to give an instruction which would have told the jury it "should consider" the manner and character of any previous attack made by Carrigan upon Jennifer Jones in determining the guilt or innocence of the defendant. We hold this instruction falls within the general proscription of instructions which single out particular facts in evidence. See Stephens v. State, 20 Ariz. 37, 176 P. 579 (1918), and see many decisions from other jurisdictions, supra, holding it improper to single out particular evidence.

The defendant's final contention is that there was reversible error when a juror was found reading a book on criminal instructions during a recess in the trial, before the jury was sequestered to deliberate. At a special hearing conducted by the court after the trial, this juror testified he perused Reid's Branson Instructions to Juries, Vol. 5 (3d ed.), and that he had read an instruction in this publication on self-defense.[7] The defendant treats this instruction as if it were given by the court and argues that the instruction was misleading in that it states one may not use violence "to avenge a wrong or an insult already past." The defendant asserts there is no evidence in this case of any such motive on his part. In no other regard does the defendant point out any error in the "instruction."

Such an attempt at self-education by a juror during a trial is certainly not

---

7. "If, however, you should find beyond a reasonable doubt that at the time the fatal blow was struck, L. S. was in no danger of losing her life or of receiving great bodily harm from the deceased, and that there was no reasonable ground for such belief, from all the facts and circumstances surrounding this defendant and his sister at the time of the killing, and under such circumstances you find this defendant stabbed and killed deceased, he cannot go acquit on the ground of self defense, for one exercising the right of self defense is not permitted, under the law, to avenge a wrong or an insult already past; he must believe when he strikes the fatal blow. and have reasonable grounds to believe, from the facts surrounding him at the time that he or his sister was then in danger of losing his or her life or of receiving great bodily harm from the deceased. When all danger is passed and when there is no reasonable ground to fear loss of life or to fear great bodily harm, the right to act in self defense ceases under the law." § 3843 at 582.

to be encouraged. However, we see no reason to assume that this juror or any other juror gave this reading any heed when performing the function solemnly delegated to the jury in the instructions of the trial judge.

 Generally, the determination of whether a communication received by a juror during the course of the trial is prejudicial is a matter for the determination of the trial court. State v. Byrd, 94 Ariz. 139, 382 P.2d 555 (1963); cf. Lane v. Mathews, 74 Ariz. 201, 206, 245 P.2d 1025 (1952). In this case, the trial court carefully went into the effect of the extra-curricular reading indulged in by this juror and concluded there was no prejudice. We see no reason to reverse this determination.

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.